[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2024-Ohio-1083.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1083

THE STATE OF OHIO, APPELLEE, *v*. JONES, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2024-Ohio-1083.]

*Criminal law—Sentencing—R.C. 2953.08(G)—R.C. 2929.14(C)(4)—The trial court made the findings necessary to impose consecutive sentences under R.C. 2929.14(C)(4), and those findings were not clearly and convincingly unsupported by the record, R.C. 2953.08(G)(2)—Court of appeals' judgment affirmed.*

(No. 2022-1049—Submitted September 26, 2023—Decided March 27, 2024.)

APPEAL from the Court of Appeals for Cuyahoga County, Nos. 110833 and 111020, 2022-Ohio-2133.

_____

BRUNNER, J.

## I.  INTRODUCTION

{¶ 1} Appellant, James W. Jones, was sentenced in the Cuyahoga County Court of Common Pleas to an aggregate prison term of 60 months for offenses

charged under three separate indictments. He appeared before the same trial-court judge in all three cases. In one of the cases, the judge imposed two 30-month prison sentences, to be served consecutively, for Jones's convictions on one count each of trafficking marijuana and having weapons while under a disability. Those were the only sentences ordered to be served consecutively in the three cases. The Eighth District Court of Appeals affirmed Jones's sentences, holding that the record demonstrated that the trial court had made the necessary findings for imposing consecutive prison sentences and that Jones had not demonstrated that those findings clearly and convincingly were not supported by the record, which included Jones's extensive criminal history and evidence that he had lied about the offenses he committed, even during sentencing.

{¶ 2} We hold that in affirming the trial court's judgment, the Eighth District properly applied the standard of review required by R.C. 2953.08(G). We therefore affirm the judgment of the Eighth District.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 3} On March 4, 2020, a Cuyahoga County grand jury indicted Jones on one count each of trafficking marijuana, possession of marijuana, trafficking tetrahydrocannabinol ("THC") (the principal psychoactive component of marijuana), possession of THC, possession of methamphetamine, possession of cocaine, possessing criminal tools, and having weapons while under a disability. On March 5, 2021, a Cuyahoga County grand jury indicted Jones in another case on two counts of operating a vehicle while under the influence of alcohol or drugs. On July 15, 2021, Jones pled guilty in the first case to one count each of trafficking marijuana, trafficking THC, possessing criminal tools, and having weapons while

under a disability. That same day, Jones pled guilty in the second case to one count of having physical control of a vehicle while under the influence.[1]

{¶ 4} Because Jones pled guilty in the cases and no trial occurred, the trial court relied on the assistant prosecutor's summary of the facts regarding the offenses for sentencing purposes. Regarding the first case, according to the assistant prosecutor, a search of Jones's property pursuant to a search warrant resulted in police finding 72 THC "vape pens," parcels containing vape pens, more than a pound of raw marijuana, and a loaded handgun. In the second case, Jones had been found passed out at the wheel of a car while it was parked.

{¶ 5} In the first case, the trial court imposed a 30-month prison sentence for trafficking marijuana, 18 months for trafficking THC, 12 months for possessing criminal tools, and 30 months for having weapons while under a disability. The trial court ordered the trafficking-THC and possessing-criminal-tools sentences to run concurrently with each other and with all the other counts. However, it ordered Jones to serve the trafficking-marijuana and having-weapons-while-under-a-disability sentences consecutively, for an aggregate prison term of 60 months. In the second case, the trial court sentenced Jones to time already served in jail.

{¶ 6} Before imposing the consecutive sentences, the trial court engaged Jones in a lengthy colloquy, challenging his honesty and highlighting his significant criminal history. The following exchange occurred:

> THE COURT: Okay. Let's see now. As I look over your record, okay, you have 36 arrest cycles and you're 37 years old.
> THE DEFENDANT: Yes, ma'am.

---

1. Jones also pled guilty that day in a third case (which has not been appealed) to one count of attempted having weapons while under a disability. In that case, Jones had been found asleep at the wheel of a car. Police then found a gun and drug paraphernalia in the car. The trial court sentenced him to 18 months in prison, to be served concurrently with the sentences in the other cases.

THE COURT: 36 arrest cycles. And of those 36 arrest cycles I see you have 10 that relate to driving while impaired, whether it be under the influence, physical control, or open containers, driving while impaired, ten cycles. Okay.

You have—and you have three drug trafficking cases during that time. And this is not drug trafficking where you buy some drugs to use for yourself and sell some so you can afford it. No. These are shipments coming from California to you and your wife at your home under company names. This is getting pretty close to organized crime. This isn't a user sale.

Okay. And let's see, I think I counted up the number of gun cases also. It's a little hard to read my own writing. And I think what—one thing that always bothers me with repeat offenders is that they keep doing the same crime over and over and over again. There's no thought to, hey, I got caught for this once, I'm not going to do this again. No. And you even have vicious dogs more than once, you know. And close in time with each other, some of these things.

So Mr. Jones, you accepting responsibility doesn't mean that you're not going to do it again next month, or two months from now, because that's your history. That's your history. You've not learned from any of these cases because you keep repeating them.

{¶ 7} The court then engaged Jones in another lengthy discussion, during which Jones unconvincingly denied having sold drugs and insisted that the large amounts of money that he had been repeatedly discovered carrying were not drug-trafficking proceeds. The court also observed that although Jones was in court for

offenses involving his intoxication while sitting in automobiles, his license had been suspended in another case until at least 2038.

{¶ 8} Then, the court imposed Jones's prison sentences, explaining the need for consecutive sentences:

> THE COURT: Okay. But you are going to prison. And you're going to prison for 18 months on [the third case]; you're going for 30 months on Count 1 in [the first case]; 18 months on Count 3; 12 months on Count 7; and 30 months on Count 8.
>
> All of the counts will run concurrent except for Count 1 and Count 8 in [the first case], those will run consecutive. And they will run consecutive because it's necessary to protect the public from future crime by you. As I said, 36 arrest cycles in 37 years of life. So—and you've done the same crimes over and over again. So I believe it's necessary to protect the public from future crime. And 60 months is not disproportionate to the crimes you have committed in this case, as well as you committed one or more of these offenses while you were already under arrest on a previous case, okay, so that's also important here.
>
> Also, at least two or more of the multiple offenses were committed as part of one or more courses of conduct and, like I said, 60 months is not—is not too much for the crimes committed and it adequately reflects the seriousness of your conduct. And of course, your criminal conduct has been atrocious. I forgot, I think you've had 57 traffic convictions, did I read that right? Did you read that, [assistant prosecutor]?

[ASSISTANT PROSECUTOR]: I do remember looking at his [computerized criminal history] and it being quite lengthy. I can't say off the top of my head.

THE COURT: Let's see if I have that. Hold on. 53 traffic convictions.

I don't think you're a proper role model for young people. Maybe you can be one day, but you haven't done that yet, because your crimes are still happening close in time to each other. You're already in front of the Court and you're not even worried about getting in front of the Court in case number two or case number three. I think you owe your family and the community better conduct.

**{¶ 9}** Jones appealed his sentences in the first and second cases, and the Eighth District consolidated the cases for purposes of appeal. It then affirmed the trial court's judgments, finding that the trial court had made the requisite findings for imposing consecutive sentences under R.C. 2929.14(C)(4), 2022-Ohio-2133, ¶ 14, 24, and that it could not "clearly and convincingly conclude that the record does not support the trial court's R.C. 2929.14(C)(4) findings," *id.* at ¶ 21. The court of appeals did, however, remand the matter to the trial court for it to issue a nunc pro tunc sentencing entry incorporating the R.C. 2929.14(C)(4) findings that it made during sentencing. 2022-Ohio-2133 at ¶ 24.

**{¶ 10}** Jones then appealed to this court, and we accepted his appeal to review a single proposition of law:

A court of appeals violates an appellant's right to meaningful appellate review and its obligations pursuant to R.C. 2953.08(G)(2) when it fails to conduct the proper de novo review in determining

6

whether the trial court made all required findings under R.C. 2929.14(C)(4) and whether the record contains an evidentiary basis sufficient to support each required finding.

*See* 169 Ohio St.3d 1484, 2023-Ohio-1116, 206 N.E.3d 724.

### III. DISCUSSION

{¶ 11} Under Ohio's statutory sentencing scheme, there is a presumption that a defendant's multiple prison sentences will be served concurrently, R.C. 2929.41(A), unless certain circumstances not applicable in this case apply, *see, e.g.*, R.C. 2929.14(C)(1) through (3), or the trial court makes findings supporting the imposition of consecutive sentences under R.C. 2929.14(C)(4), which provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to [R.C. 2929.16, 2929.17, or 2929.18], or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or

unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Though "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, * * * it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶ 12}** R.C. 2953.08(G) instructs appellate courts reviewing the imposition of consecutive sentences, as follows:

(2) The court hearing an appeal under [R.C. 2953.08(A), (B), or (C)] shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)];

> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(F) requires an appellate court to review the entire trial-court record, including any oral or written statements made to or by the trial court at the sentencing hearing, and any presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed. R.C. 2953.08(F)(1) through (4).

{¶ 13} R.C. 2953.08(G) permits an appellate court to increase, reduce, otherwise modify, or vacate a sentence only "if it clearly and convincingly finds" that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *see also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. The standard to be applied is the standard set forth in the statute: an appellate court has the authority to increase, reduce, otherwise modify, or vacate a sentence only after it has reviewed the entire trial-court record and "clearly and convincingly f[ound] either * * * [t]hat the record does not support the sentencing court's findings under [certain statutes]" or "[t]hat the sentence is otherwise contrary to law," R.C. 2953.08(G)(2).

{¶ 14} In this case, the Eighth District identified and applied the appropriate standard of review by applying the plain language of R.C. 2929.14(C)(4) and 2953.08(G):

> Conformity with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that " 'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.' " *State*

*v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). To this end, a reviewing court must be able to ascertain from the record evidence to support the trial court's findings. *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.' " *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 176, quoting *Bonnell* at ¶ 37.

In the instant matter, the trial court specifically stated that 60 months was not disproportionate to the crimes committed in the cases or the seriousness of appellant's conduct and that at least two of the offenses were committed as part of the same course of criminal conduct. In addition, the court explicitly stated that consecutive sentences were necessary to protect the public from future crime by appellant.

\* \* \*

As the Supreme Court of Ohio has explained, when reviewing consecutive sentences, "R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds \* \* \* [t]hat the record does not support the sentencing court's findings under' " R.C. 2929.14(C)(4). *Bonnell* at ¶ 28, quoting R.C. 2953.08(G)(2)(a).

At sentencing, the court heard from appellant and his counsel, who presented photographs depicting community

involvement by appellant and submitted letters of support to the court. However, regardless of any good appellant has done in his community, when considering the crimes he has committed, the record supports the trial court's determination that appellant's actions and criminal history made him a danger to the public.

In this case, the record reflects that appellant had had 36 arrest cycles in 37 years, several of which were related to drugs. As noted by the trial court, the amount of drugs involved in this case was greater than just personal use. Appellant also had multiple gun cases and was presently being sentenced on a case involving a gun. We cannot clearly and convincingly conclude that the record does not support the trial court's R.C. 2929.14(C)(4) findings.

(Brackets sic.) 2022-Ohio-2133 at ¶ 13-14, 19-21.

{¶ 15} Jones's argument that the Eighth District's decision below lacked the review required is unavailing. The transcript of Jones's sentencing hearing clearly shows that the trial court made the findings necessary to impose consecutive sentences, and Jones has not demonstrated that those findings were not supported by the record. The trial court said, for example:

[The sentences] will run consecutive because it's necessary to protect the public from future crime by you. As I said, 36 arrest cycles in 37 years of life. So—and you've done the same crimes over and over again. So I believe it's necessary to protect the public from future crime. And 60 months is not disproportionate to the crimes you have committed in this case, as well as you committed one or more of these offenses while you were already under arrest on a previous case, okay, so that's also important here.

**{¶ 16}** This passage reflects a clear finding by the trial court that "consecutive service is necessary to protect the public from future crime * * * and that consecutive sentences are not disproportionate to the seriousness of [Jones's] conduct and to the danger [he] poses to the public," R.C. 2929.14(C)(4). It is also a finding that Jones "committed one or more of the multiple offenses while [he] was awaiting trial or sentencing" and that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of [his] conduct," R.C. 2929.14(C)(4)(a) and (b). Moreover, the trial court's detailed statement about Jones's criminal history evinces a finding that his "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by [him]," R.C. 2929.14(C)(4)(c). In summary, the Eighth District reviewed the trial-court record and correctly determined that the trial court made the findings necessary to impose consecutive sentences and that those findings are not clearly and convincingly unsupported by the record.

## IV. CONCLUSION

**{¶ 17}** The trial court made the findings necessary for the discretionary imposition of consecutive sentences under R.C. 2929.14(C)(4), and those findings were not clearly and convincingly unsupported by the record, R.C. 2953.08(G)(2). We therefore affirm the judgment of the Eighth District Court of Appeals.

Judgment affirmed.

KENNEDY, C.J., and FISCHER, DEWINE, and DETERS, JJ., concur.

DONNELLY, J., concurs, with an opinion joined by STEWART, J.

_____

**DONNELLY, J., concurring.**

**{¶ 18}** There is nothing terribly wrong with the sentence at issue in this appeal. Appellant, James W. Jones, received a 60-month aggregate prison sentence for five felony convictions that were the latest additions to his lengthy criminal record. I concur in the majority's decision to affirm the judgment of the Eighth District Court of Appeals, which affirmed Jones's sentences, 2022-Ohio-2133, ¶ 23-24. But I write separately to point out that Jones's aggregate prison sentence could have fallen anywhere within the limits for individual and consecutive felony prison sentences under R.C. 2929.14 and the result of this appeal would be the same, given this court's recent jurisprudence regarding appellate review of felony sentences, or really, our erasure of any meaningful review. *See State v. Gwynne*, __ Ohio St.3d __, 2023-Ohio-3851, __ N.E.3d __ ("*Gwynne III*") (lead opinion).

**{¶ 19}** The trial court was not required to impose a prison term for any of Jones's felony convictions, but to the extent that the court wanted to impose prison time, the respective minimum and maximum prison terms were 6 and 12 months for Jones's fifth-degree-felony conviction, R.C. 2929.14(A)(5); 6 and 18 months for each of his two fourth-degree-felony convictions, R.C. 2929.14(A)(4); and 9 and 36 months for each of his two third-degree-felony convictions, R.C. 2929.14(A)(3)(b). The trial court decided to impose a 30-month prison term for each of Jones's two third-degree-felony convictions, and it decided that it was appropriate under R.C. 2929.14(C)(4) to run those two prison terms consecutively.

**{¶ 20}** The majority's detailed description of the trial court's sentencing rationale makes it clear that the court's decision was well researched and that the court used a well-thought-out approach to fashioning an appropriate sanction for the human being who stood convicted before it. This is an example of a trial-court judge doing her best to be fair and reasonable in the absence of necessary guardrails in Ohio's broad statutory sentencing scheme, without access to sentencing data from any statewide system, and without the help of a meaningful indeterminate-sentencing system with an independently operating parole board that can

distinguish between a prisoner who has been rehabilitated and a prisoner who should remain incarcerated.

{¶ 21} The judge was dealing with offenses that had no presumption of prison time, but she was also dealing with a person who had not heeded the many previous attempts to rehabilitate him. She had to endure the struggle of choosing sanctions to somehow satisfy the monumental yet amorphous goals of protecting the community and setting Jones on the path to rehabilitation. All trial-court judges face that struggle: How much weight should be given to each of the many context-specific, often-overlapping factors involved in sentencing? Will confining the defendant increase or decrease the chance of the defendant's recidivism as compared to other potential sanctions? It is certainly "not easy to predict future behavior," but nonetheless, "prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system." *Jurek v. Texas*, 428 U.S. 262, 274-275, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (lead opinion). A judge is neither clairvoyant nor infallible, so the best path to a decision that is fair, reviewable, and useful for future-reference purposes is the path that the trial-court judge took in this case: the one by which the sentencer gathers and provides as much information as possible. *See id*. at 276 (it is essential to have "all possible relevant information about the individual defendant whose fate [the sentencer] must determine"); *Gall v. United States*, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (a sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing").

{¶ 22} It is evident from the sentencing transcript that the trial-court judge closely studied and took notes from the presentence-investigation ("PSI") report that she ordered at the time of Jones's guilty pleas. The judge engaged in a thorough colloquy with Jones to understand the context of his prior arrests and convictions. She studied the patterns of Jones's prior criminal activity in relation to his

substance-abuse history, and she considered the seriousness of his drug and firearms offenses. And as the majority opinion explains, the trial court made the findings necessary to impose consecutive sentences. In a vacuum, 60 months in prison might seem like a harsh sentence for a handful of low-level, nonviolent felony offenses, but the judge plainly articulated the link between Jones's repeated criminal conduct and the need to impose a sentence to protect the public from Jones. She reviewed the context of Jones's most recent offenses, which were committed while he was already facing criminal charges, and determined that 60 months in prison was not disproportionate to the seriousness of his conduct.

{¶ 23} The trial court was able to make an informed sentencing decision thanks to the PSI that had been performed under R.C. 2951.03 and Crim.R. 32.2. Collecting information about the defendant's criminal history is a required component of a PSI. R.C. 2951.03(A)(1); Ohio Adm.Code 5120:1-14-04(A)(2)(b). Information about the defendant's criminal history is likewise an important component of the Ohio Risk Assessment System. *See* R.C. 5120.114; Ohio Adm.Code 5120-13-01; Latessa, Smith, Lemke, Makarios & Lowenkamp, *Creation and Validation of the Ohio Risk Assessment System: Final Report*, at 43-44 (July 2009), available at https://www.uc.edu/content/dam/uc/ccjr/docs/reports/project_reports/ORAS_Final_Report.pdf (accessed Feb. 28, 2024) [https://perma.cc/B8E3-LAXF].

{¶ 24} Courts see the value in having access to data about a defendant's past behavior and responses to rehabilitative efforts when determining whether a greater or a lesser punishment is warranted for the defendant. *See Rummel v. Estelle*, 445 U.S. 263, 276, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (justifying harsher punishment for people whose histories of repeated offenses and repeated punishments indicate a high likelihood of recidivism); Sidhu, *Moneyball Sentencing*, 56 B.C.L.Rev. 671, 675 (2015) ("only adult criminal history is an appropriate factor in actuarial risk-assessments, provided that adult criminal history

is limited by temporal and qualitative considerations"). And I believe we should also see the value in having access to data about the sentences of similarly situated criminal defendants across Ohio. If we are truly interested in meting out criminal sanctions that are proportionate to the offenses committed, consistent, and actually effective in promoting the greater good (e.g., by increasing public safety and lowering taxpayer costs), we need to have a system for the standardized collection and sharing of data about criminal sentences similar to what we have for defendants who are being sentenced. *See generally* Ohio Criminal Sentencing Commission, *Criminal Justice Reform in Ohio* (Apr. 12, 2019), available at https://www.supremecourt.ohio.gov/Boards/Sentencing/resources/general/CJRefo rmOhioCupp2019.pdf (accessed Feb. 28, 2024) [https://perma.cc/YG77-F7EF]; Ohio Criminal Sentencing Commission, *The Data Disconnect: Adult Criminal Justice Data in Ohio* (Jan. 2019), available at http://www.supremecourt.ohio.gov /Boards/Sentencing/resources/general/dataBrief.pdf (accessed Feb. 28, 2024) [https://perma.cc/G42X-MPK3]; Ohio Criminal Sentencing Commission, *Ohio Sentencing Data Platform* (Jan. 12, 2023), available at https://www.supremecourt.ohio.gov/docs/Boards/Sentencing/resources/OSDPFoc usGroupSummary.pdf (accessed Feb. 28, 2024) [https://perma.cc/FPC2-HAXE].

{¶ 25} Nothing about Ohio's use of PSI reports or risk-assessment tools has destroyed judicial discretion; it has simply helped inform judicial discretion. I believe that having more of such information—in the form of criminal-sentencing data—would only enhance and not hinder the judicial decision-making process inherent in criminal sentencing. Conversely, having less information can only be dangerous, given that trial courts have little other guidance for criminal-sentencing purposes apart from the vague and overlapping standards and factors within R.C. 2929.11 and 2929.12 concerning sentencing in general and within R.C. 2929.14(C)(4) concerning consecutive sentencing. And sentencing courts certainly receive no oversight from Ohio's appellate courts, thanks to this court's

refusal to provide any articulable standards for reviewing consecutive sentences imposed under R.C. 2929.14(C)(4) in *Gwynne III*, __ Ohio St.3d __, 2023-Ohio-3851, __ N.E.3d __, and this court's refusal to recognize any authority to review a trial court's application of R.C. 2929.11 and 2929.12, *see State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649.

{¶ 26} Although the function of Ohio's appellate courts is not to second-guess trial courts' sentencing decisions, "every conscientious trial-court judge appreciates the fact that appellate courts have more time to contemplate the record and correct any legal or factual errors that are determined to exist on appeal." *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 89 ("*Gwynne I*") (Donnelly, J., dissenting). An appellate court's ability to act as a safety valve against outlier criminal sentences is instrumental, because the "varied and chaotic circumstances" of a regular day at a busy trial court "pose the risk of distracting [the] court[] from [its] obligation to consider the core purposes of sentencing before taking away a defendant's liberty." *Id.* at ¶ 83 (Donnelly, J., dissenting).

{¶ 27} A safety valve against outlier sentences is crucial when the possibility of consecutive sentences sets the sentencing parameters at not merely a range of months or even years but decades. Discretion is valuable and valued only when there are reasonable boundaries to it. *See* Pinto, *Can AI Improve the Justice System?* The Atlantic (Feb. 13, 2023), available at https://www.theatlantic.com /ideas/archive/2023/02/ai-in-criminal-justice-system-courtroom-asylum/673002/ (accessed Feb. 28, 2024) [https://perma.cc/MEQ6-MFBS] ("to ensure the integrity of the law, we need not only *judicial autonomy* but also *reasonable predictability*" [emphasis sic]); *McGautha v. California*, 402 U.S. 183, 285, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) (Brennan, J., dissenting) ("discretion, to be worthy of the name, is not unchanneled judgment; it is judgment guided by reason and kept within bounds"), *rehearing granted, judgment vacated sub nom. Crampton v. Ohio*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972). If the boundaries for a possible

criminal sentence are no prison time and 24 months in prison, and the judge picks 12 months, the inability to review the trial court's choice is not catastrophic. But if a trial court can impose anything between no prison time and *over a century* in prison, as was the case in *Gwynne III*,[2] the absence of any check on the trial court's discretion is unconscionable and lays fertile ground for due-process violations. Such broad and unfettered judicial discretion in criminal sentencing is "intolerable for a society that professes devotion to the rule of law." Frankel, *Criminal Sentences: Law Without Order* 5 (1973); *see also* Kadish, *Blame and Punishment: Essays in the Criminal Law* 250 (1987) (broad sentencing discretion creates "the greatest degree of uncontrolled power over the liberty of human beings that one can find in the legal system"); *United States v. Wunderlich*, 342 U.S. 98, 101, 72 S.Ct. 154, 96 L.Ed. 113 (1951) (Douglas, J., dissenting) ("Where discretion is absolute, man has always suffered. * * * It is more destructive of freedom than any of man's other inventions").

{¶ 28} I believe that there does exist such a safety valve within R.C. 2953.08(G)(2), in which the General Assembly gave Ohio's appellate courts the specific authority to review felony sentences and modify or otherwise correct certain sentencing errors and outliers. The appellate-review power within R.C. 2953.08(G)(2) was a product of the General Assembly's command to the Ohio Criminal Sentencing Commission in the 1990s to create "a comprehensive criminal sentencing structure" to, among other things, "enhance public safety," reduce prison overcrowding, and "assure proportionality, uniformity, and other fairness in criminal sentencing." R.C. 181.24(A). Part of that command required the commission to "determine whether any special appellate procedures [were]

---

2. Susan Gwynne entered guilty pleas to 31 felony counts and faced up to 8 years in prison on each of her 17 second-degree-felony convictions, *see* R.C. 2929.14(A)(2); up to 36 months on each of her 4 third-degree-felony convictions, *see* R.C. 2929.14(A)(3)(b); and up to 18 months on each of her 10 fourth-degree-felony convictions, *see* R.C. 2929.14(A)(4). *Gwynne III* at ¶ 6. Thus, she faced a maximum aggregate prison sentence of 163 years.

necessary for reviewing departures from, or the misapplication of, the general sentencing structure." R.C. 181.24(D). The commission determined that in order to "give [trial] judges discretion to be wise without giving discretion to be capricious," the appellate courts must be authorized to "monitor sentences through appellate review." Ohio Criminal Sentencing Commission, *A Plan for Felony Sentencing in Ohio: A Formal Report of the Ohio Criminal Sentencing Commission*, at 19 (July 1, 1993), available at https://www.ojp.gov /pdffiles1/Digitization/144644NCJRS.pdf (accessed Feb. 28, 2024) [https://perma.cc/HDJ3-AA49]. The resulting sentencing scheme was enacted in 1995 through Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136.

{¶ 29} In addition to the basic power to vacate a sentence that was imposed contrary to law and remand for resentencing, R.C. 2953.07(A), the General Assembly has also declared:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under [R.C. 2953.08] or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under [R.C. 2929.13(B) or (D)], [R.C. 2929.14(B)(2)(e) or (C)(4)], or [R.C. 2929.20(I)], whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2). Most relevant here, an appellate court is statutorily empowered to modify a felony sentence if that court "clearly and convincingly

finds" that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4) to support the sentencing court's decision to depart from the presumption of concurrent prison terms under R.C. 2929.41(A) and instead impose two or more consecutive prison terms. R.C. 2953.08(G)(2)(a).

{¶ 30} Confusion arose regarding R.C. 2953.08's negative reference to an abuse-of-discretion standard of review, its positive reference to factual findings by clear and convincing evidence, and how exactly an appellate court was to review a generic set of findings purporting to justify not just consecutive service of two prison terms but consecutive service of several prison terms. *See State v. Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, ¶ 12, 24 ("*Gwynne II*"), *vacated and superseded on reconsideration by Gwynne III*, __ Ohio St.3d __, 2023-Ohio-3851, __ N.E.3d __. Although this court resolved a great deal of this confusion and provided coherent and meaningful guidance regarding appellate review of consecutive sentences in *Gwynne II*, that progress was erased on reconsideration in *Gwynne III*. As things currently stand, a trial court's decision to impose consecutive sentences apparently must be affirmed as long as the court jumped through the hoops required by R.C. 2929.14(C)(4) and the record does not "overwhelmingly support a contrary result," *Gwynne III* at ¶ 18.

{¶ 31} Returning to the specifics of this case, given the sentencing ranges for Jones's low-level felonies described above, the trial court could have imposed anything from no prison time up to an aggregate prison sentence of 120 months. *See* R.C. 2929.14(A)(3)(b), (A)(4), and (A)(5). That prison-sentence range is certainly not as shocking as the range exceeding a century in the *Gwynne* cases, but it is still a significant amount of time. There is nothing more to do to review Jones's 60-month aggregate prison sentence beyond what the majority opinion has already done. But I find it extremely problematic that under the decision in *Gwynne III*, the analysis would be the same regardless of whether the trial court had imposed

an aggregate prison sentence of 12 months or an aggregate prison sentence of 120 months.

**{¶ 32}** Requiring a sentencing court to merely jump through hoops before imposing a prison sentence is insufficient to ensure that the length of the prison sentence is necessary, fair, or proportionate. I sincerely hope that this court takes the opportunity in the future to rebound from its degeneration of appellate review of felony sentences. In the meantime, I concur in the majority opinion in this particular case.

STEWART, J., concurs in the foregoing opinion.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Assistant Prosecuting Attorney, for appellee.

Patituce & Associates, L.L.C., Joseph C. Patituce, and Megan M. Patituce, for appellant.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Stephen P. Carney, Deputy Solicitor General, urging affirmance for amicus curiae, Ohio Attorney General Dave Yost.

_____