[Cite as *State v. Peoples*, 2025-Ohio-5777.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Appellee

v.

Samuel Peoples

Appellant

Court of Appeals No.  {48}L-25-00119
{48}L-25-00120
{48}L-25-00121

Trial Court No.  CR0202402010
CR0202402074
CR0202402297

**DECISION AND JUDGMENT**

Decided: December 26, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this consolidated appeal, following his guilty pleas, defendant-appellant, Samuel Peoples, appeals the May 8, 2025 judgments of the Lucas County Court of Common Pleas sentencing him to an aggregate prison term of 17.5 to 20 years.  For the following reasons, we affirm in part and reverse in part.

## I. Background and Facts

{¶ 2} Peoples was indicted in three separate cases. In case No. CR 202402010 ("case 2010"), he was indicted on one count each of aggravated burglary in violation of R.C. 2911.11(A)(1), a first-degree felony (count 1); felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony (count 2); discharging a firearm on or near a prohibited premises in violation of R.C. 2923.162(A)(3), a third-degree felony (count 3); strangulation in violation of R.C. 2903.18(B)(3), a fourth-degree felony (count 4); tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony (count 5); and carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a fourth-degree felony (count 6). Counts 1, 2, and 3 of case 2010 each carried a firearm specification under R.C. 2941.145(A). In case No. CR 202402074 ("case 2074"), Peoples was indicted on one count each of burglary in violation of R.C. 2911.12(A)(3), a third-degree felony (count 1); and failure to comply with a signal of a police officer in violation of R.C. 2921.331(B), (C)(1), and (C)(5)(a)(ii), a third-degree felony (count 2). In case No. CR 202402297 ("case 2297"), Peoples was indicted on one count of failure to comply with a signal of a police officer in violation of R.C. 2921.331(B), (C)(1), and (C)(5)(a)(ii), a third-degree felony.

{¶ 3} According to the trial court's order on Peoples's arraignment in case 2010, the State requested that Peoples undergo a general psychiatric evaluation, which the court granted. Based on some of the issues raised by the psychiatric evaluation, the trial court ordered a competency evaluation of Peoples.

2.

{¶ 4} At the competency hearing, the trial court admitted the competency evaluation into evidence. In the evaluation, the evaluator opined that Peoples was capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. Despite some anxiety and potentially having PTSD or a psychotic disorder, Peoples did not appear to have any serious mental illnesses. The evaluator specifically noted that there were "repeated indications of feigning or exaggerating of symptoms. [Peoples] appears likely to have greater capabilities than he presents." Additionally, Peoples was not intellectually disabled. Although his intellectual functioning was likely lower than many of his peers and he had difficulty with reading comprehension, "his intellectual functioning would typically not be considered so low that it would prevent him from being able to understand and participate in the court process." And, while Peoples would likely benefit from having terms defined for him and having written materials read to him, "he appears capable of participating in the process and advocating for his own defense." The court noted that the evaluator "opined that Mr. Peoples sufficiently understands the nature and objective of the proceedings against him and is, is capable of assisting in his own defense" before finding Peoples competent to stand trial.

{¶ 5} After the competency hearing, Peoples and the State reached an agreement under which Peoples pleaded guilty to (1) count 1 without the firearm specification and count 2 with the firearm specification in case 2010; (2) count 1's lesser-included offense of attempted burglary in violation of R.C. 2923.02 and 2911.11(A)(3), a fourth-degree

3.

felony, and count 2 in case 2074; and (3) the sole count in case 2297. In exchange for Peoples's guilty pleas, the State agreed to dismiss the firearm specification on count 1 of case 2010 and the remaining counts of case 2010 at sentencing.

{¶ 6} During the plea hearing, the trial court began its plea colloquy with Peoples. When the court asked Peoples if he was satisfied with his attorney's representation of him, he responded, "[l]ike a 50/50." The court explained that it could not accept his guilty pleas if Peoples was not satisfied with the representation his attorney provided because "having competent counsel is part of being [sic] voluntarily and knowingly, intelligently entering this plea." Because of Peoples's response, the court inquired further. Peoples confirmed that his attorney had fully explained the plea agreement to him, and that he completely understood the plea agreement. The court then took a short recess for Peoples to confer with his attorney. After the recess, Peoples confirmed for the court that he was satisfied with his attorney's representation. Following a thorough Crim.R. 11 plea colloquy, the trial court accepted Peoples's pleas and found him guilty.

{¶ 7} At the sentencing hearing, Peoples's attorney noted that Peoples had a history of substance abuse and mental health issues that did not rise to the level of affecting his competency to stand trial. He believed that mental health and substance abuse were a "big component with Mr. Peoples, . . ." and counsel hoped that Peoples could get the help he needed both in prison and after he was released. Counsel also noted that Peoples's criminal record consisted of one felony charge as a juvenile, three felony charges as an adult, and multiple misdemeanor charges, including traffic charges. He

4.

asked the court to impose a "reasonable" prison sentence that would allow Peoples "to continue his life after prison, have an opportunity to learn from his behavior, [and] learn how to become a productive member of society."

{¶ 8} When the State addressed the court, it provided some details surrounding the charges against Peoples. It explained that case 2010 involved Peoples breaking into his ex-girlfriend's house and strangling her. When she was able to get away from him, he followed her into the street and shot at her. Police found five shell casings and a "bullet defect" in the ex-girlfriend's vehicle. Four days later, police saw Peoples on a bus. When they attempted to stop him, he fled. While running from the police, he threw a gun, which the officers later test fired and discovered was a match to the gun used to shoot at Peoples's ex-girlfriend. Regarding case 2074, the State said that Peoples attempted to burglarize a Wal-Mart store. When he was fleeing from the Wal-Mart parking lot, he almost hit a police cruiser with his vehicle, which "create[d] more of a risk of safety to others . . . ." Finally, regarding case 2297, the State explained that it was "just a sole failure to comply." The State believed that the facts of these cases "certainly [did] establish how violent and dangerous the defendant Samuel Peoples is." It requested a prison sentence of at least 15 years.

{¶ 9} When Peoples addressed the court, he said that he took responsibility for his actions and was looking forward to getting the help that he needed.

{¶ 10} Before imposing sentence, the trial court addressed Peoples's prior criminal record and his current conduct; it found that both were "bad."

5.

{¶ 11} In case 2010, the court sentenced Peoples to 5 to 7.5 years on count 1, 6 years on count 2, and 3 years on the firearm specification attached to count 2. It ordered him to serve the prison terms consecutively to each other and consecutively to the sentences in cases 2074 and 2297. To justify consecutive sentences, the court found that

> consecutive sentences are necessary to protect the public from future crime or to punish the defendant, and are not disproportionate to the seriousness of the defendant's conduct or the danger the defendant poses to the public. The Court further [found] that the offenses were committed as part of one or more courses of conduct, and the harm caused was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the defendant's conduct, and the defendant's criminal history requires consecutive sentences.

{¶ 12} In case 2074, the court sentenced Peoples to 12 months on each count. It ordered him to serve the prison terms consecutively to each other and consecutively to the sentences in cases 2010 and 2297. To justify consecutive sentences, the court found that

> consecutive sentences are necessary to protect the public from future crime or to punish the defendant, and are not disproportionate to the seriousness of the defendant's conduct or the danger the defendant poses to the public. The Court further [found] that the offenses were committed as part of one or more courses of conduct, and the harm caused was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct, and further that the defendant's criminal history requires consecutive sentences.

{¶ 13} In case 2297, the court sentenced Peoples to 18 months. It ordered him to serve the prison term consecutively to the sentences in cases 2010 and 2074. To justify consecutive sentences, the court found that

6.

consecutive sentences are necessary to protect the public from future crime or to punish the defendant and are not disproportionate to the seriousness of the defendant's conduct or the danger the defendant poses to the public. The Court further [found] that the offenses were committed as part of one or more courses of conduct, and the harm caused was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the defendant's conduct, and that the defendant's criminal history requires consecutive sentences.

Peoples's aggregate sentence amounted to 17.5 to 20 years.

{¶ 14} In each of its sentencing entries, the trial court included the following findings:

Being necessary to fulfill the purposes of R.C. 2929.11 and 2929.14(C)(4), consecutive sentences are necessary to protect the public from future crime or to punish the offender and are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds the harm caused was great or unusual such that no single prison term is adequate, therefore the sentences . . . are ordered to be served consecutively.

{¶ 15} Peoples now appeals, raising two assignments of error:

I. The trial court abused its discretion by imposing consecutive sentences without making the required findings under R.C. 2929.14(C)(4) or when those findings were not supported by the record.

II. The trial court erred by finding Mr. Peoples competent to stand trial and enter a plea, against the manifest weight of the evidence under R.C. 2945.37(G).

## II. Law and Analysis

### A. The trial court failed to include its full consecutive sentence findings in its sentencing entries, but its imposition of consecutive sentences is not clearly and convincingly unsupported by the record.

{¶ 16} In his first assignment of error, Peoples argues that the trial court failed to make the consecutive-sentence findings required by R.C. 2929.14(C)(4). Specifically, he

7.

contends that "the transcript does not fully reflect explicit findings on disproportionality or the specific aggravating factor under R.C. 2929.14(C)(4)(c)." Alternatively, if we find that the trial court made all of the necessary R.C. 2929.14(C)(4) findings, Peoples argues that the court's findings are not clearly and convincingly supported by the record because of the mitigating factors of Peoples's "mental health issues, substance abuse, low IQ, developmental disabilities, and traumatic history" and his lack of "prior violent offenses of this severity."

{¶ 17} The State responds that the trial court made all of the required findings at the sentencing hearing and in the sentencing entries. It also argues that the court's findings are not clearly and convincingly unsupported by the record because Peoples's criminal record includes "violent criminal conduct" (like assault, domestic violence, and menacing) and his conduct in these cases placed others at risk of serious injury or death.

{¶ 18} We review felony sentencing challenges under R.C. 2953.08(G)(2). *State v. Kleinhans*, 2023-Ohio-2621, ¶ 24 (6th Dist.). Under that statute, an appellate court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing" only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

8.

{¶ 19} Peoples challenges the trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4). Under that section, when a trial court imposes multiple prison terms for convictions of multiple offenses, it may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, . . ." and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 20} Thus, the statute requires the trial court to make three findings before imposing consecutive sentences. *State v. Beasley*, 2018-Ohio-493, ¶ 252; *State v. Bonnell*, 2014-Ohio-3177, ¶ 26. It must find that (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Beasley* at ¶ 252. "[T]he trial court must make the requisite findings *both* at the

9.

sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id.* at ¶ 253, citing *Bonnell* at ¶ 37.

{¶ 21} The Ohio Supreme Court clarified our standard of review of consecutive-sentence findings in *State v. Jones*, 2024-Ohio-1083. There, the court held that "[c]onformity with R.C. 2929.14(C)(4) requires the trial court to . . . note that it engaged in the analysis and that it has considered the statutory criteria and specifie[d] which of the given bases warrants its decision." (Internal quotations omitted and second brackets in original.) *Id.* at ¶ 14. The trial court is not required to state the reasons for its findings or precisely recite the language of the statute, but a reviewing court must be able to "discern that the trial court engaged in the correct analysis and [] determine that the record contains evidence to support the findings . . . ." *Bonnell* at ¶ 29; *Jones* at ¶ 11. In other words, "a reviewing court must be able to ascertain from the record evidence to support the trial court's findings." (Internal quotation omitted.) *Jones* at ¶ 14. The imposition of consecutive sentences will be upheld "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." (Internal quotations omitted.) *Id.*

{¶ 22} The "clear and convincing evidence" required by R.C. 2953.08(G)(2) is "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Gwynne*, 2023-

10.

Ohio-3851, ¶ 14 (lead opinion), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. An appellate court "must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences." *Id.* at ¶ 15.

{¶ 23} In this case, the trial court clearly made the required R.C. 2929.14(C)(4) findings for each of Peoples's cases at the sentencing hearing. For each case, the court determined that (1) consecutive sentences were necessary to protect the public from crime or to punish Peoples, (2) consecutive sentences were not disproportionate to the seriousness of Peoples's conduct or the danger Peoples posed to the public, (3) Peoples's offenses were committed as part of one or more courses of conduct and the harm caused was so great or unusual that no single prison term for any of the offenses would adequately reflect the seriousness of Peoples's conduct, and (4) Peoples's criminal history required consecutive sentences. This is all that is required by the statute. *See Jones* at ¶ 11 (a trial court is not required to State reasons to support its consecutive-sentence findings).

{¶ 24} The court did not, however, fully incorporate its findings into its sentencing entries. Each entry purports to incorporate the trial court's (C)(4)(b) finding, but the entries do not include anything about a course of conduct, which is part of the finding in R.C. 2929.14(C)(4)(b). Therefore, the sentencing entries fail to make all of the required consecutive sentence findings. "A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the

11.

sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Bonnell* at ¶ 30. Because the trial court made the required findings at the sentencing hearing but inadvertently omitted part of the (C)(4)(b) findings from its judgment entries, we must reverse and remand this case to the trial court for the limited purpose of entering nunc pro tunc entries that include the full (C)(4)(b) findings.

{¶ 25} Peoples also argues under this assignment of error that the trial court's consecutive-sentence findings are clearly and convincingly unsupported by the record. Our review of a trial court's consecutive sentences under R.C. 2953.08(G)(2)(a) is limited. *State v. Glover*, 2024-Ohio-5195, ¶ 45. We "must examine the evidence in the record that supports the trial court's findings. And [we] may modify or vacate the sentence only if [we] 'clearly and convincingly' find[] that the evidence does not support the trial court's R.C. 2929.14(C)(4) findings." *Id.* That is, "[t]he appellate-review statute does not require that the appellate court conclude that the record supports the trial court's findings before it may affirm the sentence. Rather, the statute allows for modification or vacation only when the appellate court 'clearly and convincingly finds' that the evidence does *not* support the trial court's findings." (Emphasis in original.) *Id.* at ¶ 46.

{¶ 26} Here, the trial court had before it evidence of Peoples's behavior in these cases—which included strangling and shooting at his ex-girlfriend, stealing from Wal-Mart, and fleeing from the police twice—his lengthy criminal record, his mental health,

12.

and the likelihood that he was malingering or feigning his mental health symptoms. Based on these facts, we cannot conclude that the trial court's imposition of consecutive sentences is clearly and convincingly unsupported by the record. Therefore, the trial court properly imposed consecutive sentences.

{¶ 27} Because the trial court made all of the required consecutive sentence findings at the sentencing hearing and its findings are not clearly and convincingly unsupported by the record, but it failed to include its full findings under R.C. 2929.14(C)(4)(b) in the sentencing entries, we find that Peoples's first assignment of error is well-taken in part.

**B. The trial court did not abuse its discretion by finding Peoples competent.**

{¶ 28} In his second assignment of error, Peoples argues that the trial court erred by finding him competent to stand trial and enter a guilty plea because "the record demonstrates that he did not sufficiently understand the proceedings or assist in his defense due to his low IQ, developmental disabilities, and traumatic history." He points to Peoples's "50/50" satisfaction with his attorney and the recess the court took to confirm that Peoples was satisfied with his attorney as evidence that the trial court overlooked Peoples's cognitive difficulties.

{¶ 29} The State responds that the competency evaluator considered Peoples's intelligence, developmental issues, and traumatic incidents in reaching his conclusions, and Peoples ignores the fact that the evaluator concluded that Peoples was feigning symptoms. Additionally, trial counsel told the court several time that he believed that

13.

Peoples was competent, and Peoples himself denied at the plea hearing that he had "any concerns that any mental health issues are negatively affecting [his] ability to understand what's happening in court . . . ."

{¶ 30} "The test for determining whether a defendant is competent to stand trial is whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (Brackets in original and internal quotations omitted.) *State v. Were*, 2008-Ohio-2762, ¶ 45. We review a trial court's determination of a defendant's competency for an abuse of discretion. *See State v. Vrabel*, 2003-Ohio-3193, ¶ 33. We will not disturb the trial court's findings if they are supported by some reliable, credible evidence. *Were* at ¶ 46. "Deference on these issues should be given 'to those who see and hear what goes on in the courtroom.'" *Id.*, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999).

{¶ 31} In this case, the trial court did not abuse its discretion by finding Peoples competent to stand trial and enter guilty pleas. The court had before it some reliable, credible evidence of Peoples's competence in the form of the competency evaluation, which showed that Peoples had some mental health concerns and some intellectual limitations, but those issues did not affect his ability to consult with his lawyer to a reasonable degree of rational understanding or his rational or factual understanding of the proceedings against him. The problems that Peoples cites in his brief (i.e., that the court taking a recess during his plea hearing put more pressure on him and that the proceedings

went at too rapid a pace for him to understand) are pure speculation not supported by anything in the record. Because the trial court's decision is supported by the record, we find that Peoples's second assignment of error is not well-taken.

### III. Conclusion

{¶ 32} Based on the foregoing, the May 8, 2025 judgments of the Lucas County Court of Common Pleas are affirmed in part, reversed in part, and remanded for the limited purpose of entering nunc pro tunc judgment entries that include the trial court's full findings under R.C. 2929.14(C)(4)(b). The parties are ordered to divide the costs of this appeal equally under App.R. 24.

Judgment affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.
_____
JUDGE
Christine E. Mayle, J.

Charles E. Sulek, P.J.
_____
JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.