[Cite as *State v. Holtz*, 2025-Ohio-5646.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 24AP-745 |
| v. | : | (C.P.C. No. 23CR-2215) |
| Eric W. Holtz, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 18, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Benjamin A. Tracy*, for appellee. **Argued:** *Benjamin A. Tracy.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Eric W. Holtz, appeals the judgment of the Franklin County Court of Common Pleas following a bench trial and finding of guilt to the offenses of one count each of rape and gross sexual imposition. Following a presentence investigation, the trial court imposed a total aggregate sentence of 18 years to life.

{¶ 2} The convictions here arise from Holtz's sexual conduct with his ex-girlfriend K.J.'s eight-year-old daughter Z.J. During a period of time in 2021 and 2022, Holtz lived with K.J. and Z.J. But after K.J. was referred to Franklin County Children Services and a case was opened, Z.J.'s biological father, D.P., was granted temporary custody of Z.J., and she moved in with D.P. and his girlfriend, C.B.

{¶ 3} Shortly thereafter, Z.J. disclosed to C.B. that Holtz "used to wake her up in the middle of the night and that he used to touch her in her private areas." (Sept. 9, 2024

Tr. at 37.) An assessment and interview of Z.J. was conducted at Nationwide Children's Hospital by Social Worker and Forensic Interviewer Amany Elsayed on September 21, 2022, approximately a week or two later.  During that interview, Z.J. stated that Holtz had touched her vaginal area over her clothes and had also kissed that area with his mouth.  Z.J. estimated that the conduct occurred when she was seven, although she was eight at the time of the interview.  A contemporaneous physical examination of Z.J. by Dr. Catherine Huber revealed no specific abnormalities or trauma indicating sexual abuse.

{¶ 4}    Holtz elected to waive his right to a jury, and four witnesses testified at a trial to the court—C.B., D.P., Elsayed, and Dr. Huber.  C.B. and D.P. testified without cross-examination.

{¶ 5}    Elsayed was qualified and accepted as an expert in forensic interviewing pursuant to Evid.R. 702.  She described the normal process of intake and assessment at the Nationwide Child Advocacy Center, identified and described her the report of her interview of Z.J., and specifically testified as follows:

> So the interview in the beginning [Z.J.] had elicited that Eric touched her private parts.
>
> This was actually what she said in the beginning, and then I went back and made sure to review the rules that I just mentioned earlier.
>
> And then after that she later detailed her private part was the front part that pees. And she identified Eric as the guy that's with her mom. And then she told me that he touches her private a lot.
>
> And she mentioned that mom and Eric were doing drugs. She shared that she knows this because they were doing it in the room in the garage.

(Tr. at 76-77.)  Thereafter, a video of the entire interview of Z.J. was played for the court's review.

{¶ 6}    The following day, Dr. Huber testified.  She was qualified as an expert in child sexual abuse examination and accepted without objection.  Dr. Huber described the process of her examinations at the Nationwide Child Advocacy Center and affirmed that she had physically examined Z.J. on September 21, 2022 in the course of her duties.  She identified the medical report she generated from that examination, and stated:

A: Based on the type of contact that [Z.J.] described that occurred and the length of time between the evaluation and the last incident that she reported, I wouldn't anticipate any injury having occurred in the first place, and, if there somehow was an injury, I would anticipate that it could have healed and leave no signs of lingering issue or injury four months later.

Q: And, in your expert opinion, within a reasonable degree of medical certainty, were your physical findings consistent with the history given by [Z.J.] that day?

A: Yes.

(Sept. 11, 2024 Tr. at 145-146.) Dr. Huber further indicated that she did not order sexually transmitted infection ("STI") testing because "[b]eing that the [source of the] oral [contact] involved was the alleged perpetrator and the genital involved was the patient, the likelihood that someone was carrying oral gonorrhea at the time of this contact was very low. And, based on the time frame between the contact and the child being evaluated, had there been any lingering infection for the time of four months, I would have anticipated that the child had symptoms of discharge or pain or any lingering issues, and, in that case, I would have tested." *Id.* at 149.

{¶ 7} On September 30, 2024, the trial court issued a 24-page written decision and verdict and found Holtz guilty of Counts 1 and 2 of the indictment. (Sept. 30, 2024 Bench Trial Decision & Verdict.) The court first concluded that, in general, Z.J.'s statements in the video of the forensic interview were admissible both under the rules of evidence and the Confrontation Clause of the United States Constitution. *Id.* at 4-10. Next, the trial court reviewed the evidence adduced at trial and concluded that Z.J. had stated all the elements of rape by oral-to-vaginal contact during the interview, when she testified that Holtz had "put his mouth on top of my skin . . . under" her underwear. *Id.* at 12-14, 16-17. The trial court then observed the state had proven beyond a reasonable doubt that Z.J. was less than 13 years of age at the time of the offense, which occurred at some point between April 15, 2021 and April 14, 2022. *Id.* at 15. Finally, the trial court concluded that the state had only demonstrated all of the elements of one of the two charged counts of gross sexual imposition, because it failed to prove that Franklin County was the venue for one of the two events alleged, which had occurred in an automobile in transit. *Id.* at 22-23. The trial court accordingly found Holtz guilty of first-degree felony rape of a minor under 13 years old and

of one count of third-degree felony gross sexual imposition. *Id*. at 15-23. The trial court ordered a presentence investigation, and at a hearing on November 15, 2024, sentenced the defendant to a total aggregate term of 18 years to life, by running sentences of 15 to life for the rape count and three years for the gross sexual imposition count consecutively. (Nov. 19, 2024 Jgmt. Entry at 1-2.)

{¶ 8} Holtz timely appealed the trial court's judgment, and now asserts two assignments of error:

> I. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of Rape and Gross Sexual Imposition as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

> II. The trial court erred to the prejudice of appellant by improperly sentencing him to consecutive terms of incarceration in contravention of Ohio's Sentencing Statutes.

{¶ 9} Holtz's first assignment of error asserts that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Pursuant to *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllbaus, to determine whether a conviction is supported by sufficient evidence of guilt, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id. following Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶ 10} But determinations of credibility and weight of the testimony are primarily for the trier of fact, *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus, and the finder of fact may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Moreover, given that this appeal stems from a bench trial, this court must be mindful of the maxim that a " 'trial judge is presumed to know the applicable law and apply it accordingly.' " *State v. Dear*, 2014-Ohio-5104, ¶ 11 (10th Dist.), quoted in *State v. Davis*, 2018-Ohio-58, ¶ 23 (10th Dist.). An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the

evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 2014-Ohio-2501, ¶ 22 (10th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 11} But in this case, neither contention has merit. Regarding Holtz's sufficiency claim and viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find that Z.J.'s statements in the interview were sufficient evidence of sexual contact, and therefore evidence of both rape and gross sexual imposition. Z.J.'s status as an unmarried minor has never seriously been in question, nor has the fact that she was and still is under 13 years of age.

{¶ 12} The defense presented no evidence and did not attempt to secure Z.J.'s testimony by subpoena for purposes of cross-examination. Accordingly, the evidence at trial does not weigh against the conviction, because no evidence weighing against the conviction was introduced. Reversal on manifest-weight grounds requires conflicting evidence, and more specifically, evidence that weighs heavily against the conviction and creates a manifest miscarriage of justice. Such a conflict is wholly absent on this record—this case is essentially based on Z.J.'s interview, and Holtz has provided no evidence to undermine Z.J.'s credibility in that interview. Accordingly, Holtz's convictions are both supported by sufficient evidence and not against the manifest weight of the evidence, and his first assignment of error must be overruled.

{¶ 13} Holtz's second assignment of error challenges the trial court's decision to run his three-year gross sexual imposition sentence consecutive to his mandatory 15-years-to-life rape sentence. The trial court stated at the sentencing hearing that "consecutive sentences are necessary to protect the public and punish the offender, are not disproportionate to the totality of the crimes, and specifically [found] that the crime -- the harms were so great or unusual that a single term would not adequately reflect the seriousness of the conduct." (Nov. 15, 2024 Tr. Vol. 4 at 224.) (*See also* Jgmt. Entry at 2

(stating that the court "finds consecutive sentences are imposed to protect/punish, not disproportionate, finding that the harm is so great or unusual that a single term does not adequately reflect the seriousness of the conduct").)

{¶ 14}  Holtz argues that the trial court's finding that the consecutive sentences were "not disproportionate to the totality of the crimes" does not comport with R.C. 2929.14(C)(4), which as a predicate to consecutive sentences requires the trial court to conclude that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶ 15}  But we observe that in *State v. Jones*, 2024-Ohio-1083, ¶ 6-8, the Supreme Court affirmed consecutive sentences where the trial court found at the sentencing hearing that the total aggregate sentence "was not disproportionate to the crimes [the defendant] has committed in this case" without a specific finding that the sentence was not "disproportionate" to the danger the defendant posed to the public.  In *Jones*, the Supreme Court quoted *State v. Bonnell*, 2014-Ohio-3177, ¶ 37 and held that the trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry."  Under *Jones,* we must conclude that the trial court's statement that Holtz's sentence is "not disproportionate to the totality of the crimes" is equivalent to the finding that Holtz's sentence is "not disproportionate to . . . the danger the offender poses to the public." Therefore, Holtz's second assignment of error also lacks merit and is overruled.

{¶ 16}  For the foregoing reasons, Holtz's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MENTEL and DINGUS, JJ., concur.

_____