[Cite as *State v. Miller*, 2025-Ohio-2684.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                        No. 114629

    v.                                      :

ROBERT B. MILLER,                       :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 31, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-652565-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Friedman, Nemecek, Long & Grant, L.L.C. and Eric C. Nemecek, *for appellant.*

WILLIAM A. KLATT, J.:

{¶ 1} Defendant-appellant Robert B. Miller ("Miller") appeals the trial court's imposition of consecutive prison sentences. For the following reasons, we affirm the lower court's sentence.

**Factual and Procedural History**

{¶ 2}　This is Miller's third appeal following his 2022 convictions on gross sexual imposition and child endangering that arose from Miller's physical and sexual abuse of his daughter R.M. and physical abuse of his daughter H.M.

{¶ 3}　The underlying facts and initial sentencing were summarized by this court in Miller's direct appeal:

> At trial, the state elicited substantial testimony regarding Miller's home life, including allegations that he perpetrated physical and sexual abuse against members of his family through fear, isolation, and manipulation.
> . . .
>
> Miller's eldest daughter, R.M. testified that Miller was "extremely violent" and had "extreme anger control issues." (Tr. 129-130.) She explained that Miller was very strict and believed discipline was necessary to correct his children's misbehavior. Rather than grounding his children, Miller would "line [them] up and beat [them] until someone admitted to whatever it was he thought [they] did." (Tr. 122.) R.M. testified that Miller used various objects to facilitate his discipline, including wooden paddles, leather straps, hangers, and cords. R.M. opined that Miller's "spare the rod, spoil the child" philosophy of parenting was premised on "[his] interpretation of the Bible and what he thought was the correct way to do things." (Tr. 122.)
>
> R.M. testified that Miller also engaged in a pattern of sexual abuse that began when she was a child. . . .
>
> R.M. . . . first disclosed the sexual abuse to her mother when she was 17 years old. . . . In the years that followed, R.M. told several other individuals about her sexual abuse, including her youngest sister, H.M., her childhood friend, her boyfriend, and her youth pastor. The rest of R.M.'s family learned of Miller's conduct during a family meeting held in 2015. Ultimately, however, R.M. did not report Miller's conduct to the police until November 2019.
>
> H.M. corroborated much of R.M.'s testimony regarding their father's anger and disciplinary practices, stating that his "beatings" and "verbal

abuse" were premised on his strict religious practices. (Tr. 213.) When H.M. was 17-years old, Miller learned that she had lied about her whereabouts and had visited a boy without permission. When H.M. arrived home later that day, Miller "took her inside and pulled out an extension cord and beat [H.M.] again and again until [her] legs were so bruised and swollen that * * * for the rest of the month [she] couldn't wear shorts no matter how hot it was." (Tr. 214.) . . .

H.M. did not disclose the incident of abuse to the police until 2019. H.M. was reluctant to file a police report against Miller because she "wanted to move on with [her] life." (Tr. 218.) Years later, however, H.M. decided to cooperate with the investigation against Miller because "[he] proved he is still a threat to society." (Tr. 218-219.)

Miller's middle daughter, Ra.M., reiterated much of the testimony of her sisters, R.M. and H.M. She confirmed that Miller often forced her oldest sister, R.M., to sleep in his bed without any of the other children. She further testified that Miller was quick to anger and very strict. . . .

Miller's sister-in-law, H.D., testified that she lived with Miller and Mary [(Miller's former wife and the mother of R.M., H.M., and Ra.M.)] in 1989 and served as a live-in nanny for several years. At some point in 1996, . . . Miller then forced H.D. to engage in vaginal intercourse. . . .

Forensic testing performed in October 2021, confirmed that Miller is the biological father of H.D.'s eldest daughter, S.W., born July 10, 1997. H.D. maintained that S.W. was conceived during the sexual assault in 1996.
 . . .

Miller's nieces, . . . testified on behalf of Miller. Each described their fondness for Miller and the important role he played in their childhood. [The nieces] spent significant time in Miller's home and often observed him administer discipline to his children. They stated that Miller used a wooden paddle to whip the children, but "the rule was three swats, three whooping not hard enough to leave a mark[.]" (Tr. 350.) . . .

Mary also testified on behalf of the defense. Mary did not dispute the nature of Miller's discipline practices or his use of objects to "administer spankings." (Tr. 420.) However, Mary denied ever seeing Miller spank his child with a cord. Mary testified that she had private conversations with Miller when his discipline crossed the line, but that it was her duty to "submit and respect [her] husband." (Tr. 421.)

Regarding the incident when H.M. was 17-years[-]old, Mary testified that Miller "started whipping her for not telling the truth about where she was or who she was with." (Tr. 431.) Mary stated that H.M. sustained bruises on her legs and had a difficult time wearing pants as a result of her injuries.

Mary was aware of R.M.'s allegations of sexual abuse against Miller well before a police report was filed in 2019. Mary explained that R.M. first disclosed Miller's inappropriate behavior when she was 16 years old. However, Mary did not report the alleged conduct because R.M. "begged and pleaded with [her] over and over again to * * * not say anything." (Tr. 434.) Ultimately, Mary did not contact the authorities or otherwise disclose the allegations to anyone else out of fear of "embarrassing [R.M.] and, you know, the family[.]" (Tr. 434.)

Miller testified on his own behalf. Throughout his direct examination, Miller described his perspectives on parenting, including his duty as "the head of the household" to "correct" his children's behavior when necessary. (Tr. 455-456.) Miller conceded that he was strict with his children and would "spank or whoop" them with a paddle, his hand, or a belt. Miller further confirmed that there were specific occasions where he has "gotten out of hand in spanking [his] children." (Tr. 461.) For instance, Miller testified that when H.M. was 17-years old, he believed that H.M. had been lying about her whereabouts one day, so he "whipped her" with a leather belt until she admitted that she had been with a boy from work. Miller did not dispute that he was angry and went "overboard." (Tr. 422.) However, he denied using an extension cord, and further minimized the degree of harm caused to H.M., stating that she was able to go into work later that same day.

With respect to the allegations of sexual abuse, Miller "unequivocally" denied touching R.M. inappropriately. (Tr. 474.) He testified that he did allow his children to sleep in his bed occasionally, but that he never touched R.M.'s vagina, never performed oral sex on R.M., and never required R.M. to touch his penis. Finally, Miller conceded that he had sexual intercourse with H.D. in 1996. However, he maintained that it was a consensual encounter.

At the conclusion of trial, Miller was found guilty of gross sexual imposition, a felony of the third degree, as charged in Count 2 of the indictment; child endangering, a felony of the third degree, as charged in Count 4 of the indictment; and child endangering, a felony of the second degree, as charged in Count 5 of the indictment. Miller was

found not guilty of rape and gross sexual imposition as charged in Counts 1, 3, and 6 of the indictment. Thereafter, the trial court found Miller not guilty of the sexually violent predator specification attached to Count 2 of the indictment.

At sentencing, the trial court imposed a five-year term of imprisonment on Count 2. The trial court found the child endangering offenses were allied offenses of similar import that merged for the purposes of sentencing. The state elected to proceed with sentencing on the second-degree felony offense charged in Count 5. The trial court, however, imposed an eight-year term of imprisonment on the third-degree felony offense charged in Count 4. The prison terms imposed on Counts 2 and 4 were ordered to run consecutively to each other, for an aggregate 13-year prison term.

*State v. Miller*, 2023-Ohio-1141, ¶ 5-24 (8th Dist.) ("*Miller I*").

{¶ 4} Miller filed a direct appeal, and

this court held that the State had failed to present sufficient evidence to support Miller's second-degree felony child-endangering conviction and modified the conviction to a first-degree misdemeanor. *Miller I* at ¶ 64. Miller's sentence on that count was vacated, and the case was remanded for the State to reelect which child endangering offense it wished the trial court to impose sentence on. . . .

On remand, the trial court conducted a de novo resentencing hearing and Miller's two counts for child endangering remained subject to merger. However, because the original count that Miller had been sentenced under had been reduced from a second-degree felony to a first-degree misdemeanor, the State elected for him to be sentenced on the other child-endangering count, a felony of the third degree. The trial court imposed a 36-month prison term on that count and again ordered Miller's sentence for child endangering to be served consecutive to his five-year sentence for gross sexual imposition.

*State v. Miller*, 2024-Ohio-2578, ¶ 3-6 (8th Dist.) ("*Miller II*").

{¶ 5} Following the trial court's resentencing on remand from *Miller I* —

when the court sentenced Miller to an aggregate eight-year prison term — Miller

filed a second appeal. *See Miller II*. This court found, in *Miller II*, that during the

first resentencing hearing, the trial court failed "to make the required finding that consecutive sentences are not disproportionate to the danger the offender poses to the public." *Id.* at ¶ 10. We reversed the trial court's imposition of consecutive sentences and remanded the matter a second time, for the sole purpose of conducting a new sentencing hearing to comply with the statutory language of R.C. 2929.14(C)(4).

{¶ 6} On remand following *Miller II*, the trial court conducted its second resentencing hearing on November 4, 2024, for the limited purpose of determining whether the five-year prison sentence on Count 2 and the three-year prison sentence on Count 4 could be run consecutively. The trial court heard from counsel for Miller and the State; Miller chose not to make a statement.

{¶ 7} The State argued that R.M. was subjected to sexual and physical abuse by Miller for a number of years and H.M. endured significant physical abuse on numerous occasions including when Miller whipped her with an extension cord. The State argued that Miller's sexual and physical abuse of his children constituted a course of conduct, demonstrated the danger Miller posed to the public, and showed the seriousness of Miller's conduct. The State further argued that the offenses were so great or unusual that a single prison term could not adequately reflect the seriousness of Miller's conduct. The State asked the trial court to fully consider the trial transcripts and victim statements of R.M. and H.M. from the first sentencing hearing in June 2022. The victim statements were introduced as exhibits at the November 2024 resentencing hearing.

{¶ 8} Defense counsel contended that Ohio law favors concurrent sentences. Defense counsel contended that Miller did not "evidence[ ] any kind of criminal behavior towards the public" but only to his family and any such threat was eliminated because Miller's family stopped communicating with him after the trial. Miller's counsel further argued that 70-year-old offenders like Miller "are unlikely to be a threat to the public." Additionally, defense counsel argued that the ten-year gap in time between the sexual abuse of R.M. that supported the gross sexual imposition conviction and the beating of H.M. that justified the child endangerment conviction as well as the difference in the nature of the offenses — sexual versus physical abuse — precluded the trial court from finding that Miller's offenses constituted a course of conduct.

{¶ 9} After hearing from counsel, the trial court sentenced Miller to a five-year sentence on Count 2 and a 36-month sentence on Count 4, to be served consecutively. The trial court also made these findings:

> Mr. Miller, on Count 2, stipulated to, you'll receive a five-year sentence. On Count 4 you'll receive a 36-month sentence. I do find that these offenses were committed as part of a course of conduct that was so great or that the harm was so great or unusual that a single prison term would not adequately reflect the seriousness of your conduct.

> Mr. Miller, of the hundreds of cases I've tried and thousands of cases I've handled, I remember yours very well. You are frankly an incestuous sadist cloaked as a religious zealot and I find your behavior over the course of your minor children's life to be reprehensible. As far as protecting the public, immediate family is public. After five years Mr. Miller could get out and make any attempts he wants to contact his immediate family and their progeny so given the fact that Mr. Miller engaged in corporal punishment throughout their lifetime, although uncharged, it was extremely severe. Given the fact that on multiple

occasions he placed his hands on the vaginal area of his own daughter for his sexual gratification, I find, again, that consecutive sentences are warranted.

An eight-year total sentence as a single term is not disproportionate to the crimes that you've committed against your own minor children and the harm inflicted upon them that will last a lifetime was so great or unusual that a single term would not reflect the seriousness of your conduct.

I find these offenses were committed as part of a course of conduct that included severe corporal punishment and sexual abuse of the defendant's female minor children. . . .

Tr. 17-19. Counsel for the State clarified the court's findings as to disproportionality:

ASSISTANT PROSECUTING ATTORNEY: Judge, just under the factors, just to be clear, you indicated it's not disproportionate to the harm inflicted, but is it not disproportionate to the seriousness of the offender's conduct as well?

THE COURT: Yes.

ASSISTANT PROSECUTING ATTORNEY: Thank you, Judge.

THE COURT: Mr. Miller, eight years is not disproportionate to the seriousness of your conduct. You're ordered remanded.

Tr. 19-20.

{¶ 10} On December 4, 2024, Miller filed a timely notice of appeal presenting one assignment of error:

Miller's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as Article 1, Section 9 and 16 of the Ohio Constitution, were violated by the trial court's imposition of a consecutive sentence which was contrary to law.

**Legal Analysis**

{¶ 11} "In Ohio, there is a presumption that prison sentences should be served concurrently, unless the trial court makes the findings outlined in R.C. 2929.14(C)(4) to warrant consecutive service of the prison terms." *State v. Morris*, 2016-Ohio-7614, ¶ 25 (8th Dist.), citing *State v. Primm*, 2016-Ohio-5237, ¶ 64 (8th Dist.), citing *State v. Cox*, 2016-Ohio-20, ¶ 3 (8th Dist.), and R.C. 2929.41(A). To implement consecutive sentences, the sentencing court must find that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender, and (2) the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. R.C. 2929.14(C)(4). The court must also find that any one of the following apply:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). A sentencing court's failure to make the above statutory findings is "'contrary to law.'" *State v. Hendricks*, 2015-Ohio-2268, ¶ 12 (8th Dist.), quoting *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

{¶ 12} The sentencing court must make the statutory findings at the sentencing hearing and also incorporate the findings into its sentencing entry. *Hendricks* at ¶ 12, citing *Bonnell* at syllabus. Pursuant to R.C. 2929.14(C)(4), the trial court must "find" the relevant sentencing factors before it imposes consecutive sentences. *Morris* at ¶ 26. "However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

{¶ 13} R.C. 2953.08(G)(2) makes it clear that if the court has properly made the required findings in order to impose consecutive sentences, we must affirm those sentences unless "we 'clearly and convincingly' find '[t]hat the record does not support the court's findings[.]'" *State v. Carson*, 2015-Ohio-4183, ¶ 2 (8th Dist.) quoting R.C. 2953.08(G)(2). *State v. Venes*, 2013-Ohio-1891 (8th Dist.), we noted:

> It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge.

*Id*. at ¶ 21. The review of a claim that the record does not support the trial court's findings under R.C. 2929.14(C)(4) is "'extremely deferential.'" *State v. Balbi*, 2015-Ohio-4075, ¶ 5 (8th Dist.), quoting *Venes* at ¶ 21.

{¶ 14} Miller concedes in his appellate brief that the trial court satisfied the statutory requirements of R.C. 2929.14(C)(4) during the sentencing hearing, and the corresponding journal entry contained the same language. Appellant's brief, p. 8. However, Miller argues that although the trial court recited the necessary statutory findings that are a prerequisite to imposing consecutive sentences, the record does not support the court's findings that consecutive sentences were necessary to protect the public or that Miller's offenses constituted a course of conduct. Miller also argues that the imposition of consecutive sentences does not achieve the overriding purposes of felony sentencing.

## A. Protect the Public

{¶ 15} Miller initially argues that the record does not support a finding that consecutive sentences are necessary to protect the public from future crime. Miller argues that he is not a threat to the public since his crimes were against his family rather than the public at large and he has had no contact with his children or former wife since his convictions. Miller also contends that he will be close to 70 years old after serving the five-year prison sentence and "70 year olds are unlikely to be a threat to the public at that stage." Tr. 10.

{¶ 16} The trial court stated that immediate family constitutes the public and consecutive sentences were necessary to protect the public. The trial court also

found Miller's lack of contact with his family while he was imprisoned did not prevent him from attempting to initiate contact upon his release from prison.

{¶ 17} This court has found that where a mother abused her own children, the record supported the trial court's finding that consecutive sentences were necessary to protect her children as well as the public. *See State v. Stover*, 2025-Ohio-458, ¶ 9 (8th Dist.). Additionally, Miller's lack of contact with his immediate family during his imprisonment and his age upon release did not negate the trial court's finding that consecutive sentences were needed to protect Miller's family. The trial court made the required R.C. 2929.14(C)(4) finding that consecutive sentences were necessary to protect the public from future crime, and this court does not find clearly and convincingly that the record does not support that finding.

## B. Course of Conduct

{¶ 18} Miller disputes the trial court's finding that Miller committed two or more offenses that constituted a course of conduct. Specifically, Miller argues this court cannot rely on his commission of multiple offenses that were committed ten years apart to justify a course-of-conduct finding. Miller relies on *State v. Tucker*, 2019-Ohio-652 (2d Dist.), where the trial court erroneously found the offender demonstrated a course of conduct and imposed consecutive sentences. The *Tucker* Court found that because Tucker's conviction for abduction was not linked in any manner to a drive-by shooting Tucker committed on a separate date, in a different location, and with different motivations and unrelated facts, no course of conduct

occurred. Miller's reliance on *Tucker*, where the two convictions had no commonality, is not analogous to the instant matter.

{¶ 19} This court has found that

> [a]lthough Ohio's sentencing statutes do not specifically define "course of conduct," the Supreme Court of Ohio has found that a course of conduct may be established by factual links, such as time, location, cause of death, similar motivation, or some connection that ties the offenses together as part of a single course of conduct. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 144; *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, syllabus; *see also State v. Squires*, 8th Dist. Cuyahoga No. 110059, 2021-Ohio-2035, ¶ 11-12.

*State v. Colon*, 2022-Ohio-2137, ¶ 15 (8th Dist.). *See State v. Squires*, 2021-Ohio-2035, ¶ 11 (8th Dist.), quoting *State v. Summers*, 2014-Ohio-2441, ¶ 14 (2d Dist.) ("'some connection, common scheme or some pattern or psychological thread that ties [the offenses] together'").

{¶ 20} Upon review, we find that Miller's convictions for gross sexual imposition and child endangering — which took place ten years apart — were not temporally linked, but timing is not the sole determinant when establishing course of conduct. *See State v. Holiday*, 2017-Ohio-4306 (8th Dist.) (The trial court found a course of conduct for two incidents that occurred in March 2003 and October 2007.). The record shows Miller abused R.H. and H.M. "over the course of [his] minor children's [lives]." Miller engaged in a course of conduct during which he manipulated his relationship with family members within the confines of their home. Miller used his authoritarian role as a parent to control and isolate his vulnerable, minor daughters and subject R.M. to sexual and physical abuse and

H.M. to physical abuse. In the facts before us, the record demonstrates the convictions share some connection, common scheme, or psychological thread that ties the offenses together to establish a single course of conduct.

{¶ 21} We note that the trial court, during the November 2024 resentencing hearing, referenced alleged physical and sexual abuse by Miller that was unrelated to the convicted charges. "[U]ncharged criminal conduct can be considered by the court during sentencing so long as it is not the 'sole basis' for the sentence." *State v. Tidmore*, 2019-Ohio-1529, ¶ 26 (8th Dist.). The trial court did not err when it relied on a broad range of information, including allegations of uncharged criminal conduct, when sentencing Miller.

{¶ 22} Moreover, we disagree with Miller's argument that *Miller I's* determination that allowed joinder of the various charges against Miller in one indictment and trial of those offenses in one proceeding now precludes a finding that Miller demonstrated a single course of conduct. In *Miller I*, this court denied Miller's request for severance stating:

> After careful consideration, we find the allegations levied against Miller relied on evidence that was sufficiently simple and direct. In this case, there is nothing in the record to suggest the jury was confused by the evidence or was improperly influenced by the cumulative effect of the joinder. Although the victims named in the indictment were members of Miller's family, the alleged conduct was separated in time and involved unrelated facts and circumstances. The evidence supporting each offense was distinct and uncomplicated, and the state's witnesses discussed the evidence relating to each victim separately, succinctly, and without significant overlap or conflation of proof.

*Miller I*, 2023-Ohio-1141, at ¶ 84 (8th Dist.). A finding that the evidence of separate convictions could be presented without confusing the trier of fact is not contrary to finding those same charges share some connection, common scheme, or psychological thread that amounts to a single course of conduct. Miller also provides no case law in support of this argument.

{¶ 23} Here, the trial court found the offenses were committed as part of a course of conduct and the harm from those offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of Miller's conduct. The trial court made the necessary R.C. 2929.14(C)(4) finding that Miller's actions constituted a single course of conduct, and this court does not find clearly and convincingly that the record does not support the court's finding.

## C. Overriding Purposes of Felony Sentencing

{¶ 24} Miller argues that the imposition of consecutive sentences does not comport with the purposes of felony sentencing set forth in R.C. 2929.11 and, therefore, is contrary to law and not supported by the record. Specifically, Miller argues a minimum sanction would have accomplished the purposes of felony sentencing because his offenses did not impact the public, he is unlikely to reoffend at 70 years old after serving a five-year prison sentence, and his designation as a sexual predator and the associated registration obligations protect against the likelihood of future misconduct. Miller cites to *State v. Hawley*, 2020-Ohio-1270 (8th Dist.), where this court found a 56-year prison sentence was inconsistent with the purposes of the felony sentencing statute and the imposition of consecutive

sentences demeaned the seriousness of other more violent crimes and the harms to other victims.

{¶ 25} Under R.C. 2929.11(A), the overriding purposes of felony sentencing are to (1) protect the public from future crime by the offender and others, (2) punish the offender, and (3) promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. A sentence imposed for a felony should be reasonably calculated to achieve the three overriding purposes of felony sentencing and must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 26} Trial courts need not make factual findings under R.C. 2929.11 before imposing a maximum sentence. *State v. Kronenberg*, 2015-Ohio-1020, ¶ 27 (8th Dist.), citing *State v. Bement*, 2013-Ohio-5437, ¶ 17 (8th Dist.). In fact, "[c]onsideration of the factors is presumed unless the defendant affirmatively shows otherwise." *State v. Seith*, 2016-Ohio-8302, ¶ 12 (8th Dist.), citing *State v. Keith*, 2016-Ohio-5234 (8th Dist.). "'[T]his court has consistently recognized that a trial court's statement in the journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes.'" *State v. White*, 2018-Ohio-3414, ¶ 9 (8th Dist.), quoting *Kronenberg* at ¶ 27, citing *State v. Wright*, 2014-Ohio-3321 (8th Dist.). Accordingly, this court has

"'refused to find that a sentence is contrary to law when the sentence is in the permissible range and the court's journal entry states that it "considered all required factors of the law" and "finds that prison is consistent with the purposes of R.C. 2929.11.""" *State v. Browning*, 2022-Ohio-127, ¶ 12 (8th Dist.), quoting *State v. Williams*, 2014-Ohio-1618, ¶ 17 (8th Dist.), quoting *State v. May*, 2013-Ohio-2697, ¶ 16 (8th Dist.).

{¶ 27} We find no merit to Miller's argument that the consecutive maximum sentences do not comport with R.C. 2929.11. Miller's sentence on Count 2, in violation of R.C. 2907.05(A)(4), carried a maximum penalty of 60 months in prison, and his sentence on Count 4, in violation of R.C. 2919.22(B)(3), carried a maximum prison sentence of 36 months. *See* R.C. 2929.14(A)(3)(a) and (b). Thus, Miller's sentences of five years on Count 2, gross sexual imposition, and three years on Count 4, child endangering — both felonies of the third degree — were within the permissible statutory ranges. The trial court's November 5, 2024 sentencing judgment entry states, "[T]he court considered all required factors of the law" and "[T]he court finds that prison is consistent with the purpose[s] of R.C. 2929.11." The trial court's statements during the November 2024 sentencing hearing, as previously discussed in this opinion, as well as the record demonstrate the imposition of maximum consecutive sentences on Miller conformed with the purposes of felony sentencing, and Miller did not affirmatively show otherwise.

{¶ 28} We do not find by clear and convincing evidence that the record does not support the trial court's findings to impose consecutive sentences, and Miller

has not affirmatively demonstrated that the trial court did not consider the R.C. 2929.11 factors prior to imposing maximum sentences.  For the foregoing reasons, we overrule Miller's assignment of error.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
WILLIAM A. KLATT, JUDGE*

MARY J. BOYLE, P.J., and
DEENA R. CALABRESE, J., CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)