[Cite as *State v. Kijanski*, 2026-Ohio-1277.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 115281

    v.                           :

DAMEON KIJANSKI,                        :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 9, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-697534-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Schrembeck, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Dameon Kijanski appeals the trial court's imposition of consecutive sentences. The trial court sentenced appellant to a term of imprisonment after he pleaded guilty to an amended indictment consisting of five counts. The trial court ordered that three counts run consecutively to each other

and that the remaining two counts be served concurrent with each other and with all other counts. Appellant argues that the imposition of consecutive sentences is not supported by the record. Finding no error, we affirm.

## I. Facts and Procedural History

### A. The Shootings

{¶ 2} At approximately 11:00 p.m. on November 29, 2024, the day after Thanksgiving, two teenage individuals, cousins Y.C. and J.L., left Y.C.'s Parma home on foot to purchase food. While making their way to their destination they encountered appellant, a complete stranger. Appellant, fresh from an argument with his girlfriend over missing a bus, was likewise walking. He approached the teens from behind and began engaging verbally. Y.C. and J.L. purportedly tried to ignore appellant, but he continued to follow them.

{¶ 3} In footage captured from a surveillance camera in a nearby park, the teens can be seen walking on the sidewalk near the park. Appellant was walking in the same direction on the opposite side of the street. As the trial court itself pointed out after viewing the video, the teens were not interacting with him. (Tr. 64-65.) Appellant nevertheless began to cross the street and close distance with the teens. At the sentencing hearing, appellant stated he "was tripping out" and thought "maybe" one of the teens had a gun. (Tr. 64.) Appellant pulled a Ruger 9 mm handgun and began firing. He shot Y.C. in the leg and J.L. in the arm. They were able to run away and reunited at Y.C.'s house.

## B. The Indictment

{¶ 4} On December 12, 2024, the Cuyahoga County Grand Jury returned an eleven-count indictment that charged appellant with two counts of attempted murder, felonies of the first degree in violation of R.C. 2923.02 and 2903.02(A); two counts of discharge of firearm on or near prohibited premises, felonies of the first degree in violation of R.C. 2923.162(A)(3); two counts of felonious assault based on causing serious harm to the victims, felonies of the second degree in violation of R.C. 2903.11(A)(1); two additional counts of felonious assault based on appellant's use of a deadly weapon, felonies of the second degree in violation of R.C. 2903.11(A)(2); one count of tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1); one count of having weapons while under disability based on a previous domestic-violence conviction, a felony of the third degree in violation of R.C. 2923.13(A)(2); and one count of having weapons while under disability based on a case stemming from an adjudication of delinquency in juvenile division proceedings, a felony of the third degree in violation of R.C. 2923.13(A)(2).

{¶ 5} The counts for attempted murder, discharge of firearm on or near prohibited premises, and felonious assault each included one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A). Every count included R.C. 2941.1417(A) forfeiture specifications.

## C. The Plea

{¶ 6} Following discovery and several pretrials, appellant and the State reached a plea agreement. On April 10, 2025, appellant pleaded guilty to Count 3 as

amended, discharge of firearm on or near prohibited premises, a felony of the first degree in violation of R.C. 2923.162(A)(3), with deletion of both the one- and three-year firearm specifications. He further pleaded guilty to Counts 7 and 8 as amended, felonious assault, felonies of the second degree in violation of R.C. 2903.11(A)(2). The one-year firearm specification was deleted from Count 7. Both the one- and three-year firearm specifications were deleted from Count 8. Appellant pleaded guilty to Count 9 as indicted, tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1), and to Count 10 as indicted, having weapons while under disability based on a previous domestic-violence conviction, a felony of the third degree in violation of R.C. 2923.13(A)(2). All remaining counts, including the attempted-murder charges, were nolled.

{¶ 7} At the conclusion of the plea hearing, the court inquired whether appellant's counsel was requesting a mitigation-of-penalty report in addition to a presentence-investigation report. Counsel responded in the affirmative, and the trial court stated:

> THE COURT: All right. So we'll order a PSI and mitigation report. And, again, I need you to be open and honest with them so I can rule appropriately. Okay?
>
> THE DEFENDANT: All right.
>
> THE COURT: All right. I'm going to refer you then to the probation department for a PSI and mitigation of penalty report.

(Tr. 25-26.)

## D. The Sentencing Hearing

{¶ 8} The trial court sentenced appellant on May 22, 2025. At the outset, the trial court noted it was in receipt of the presentence-investigation report completed May 13, 2025, stating that it had "read and reviewed that." (Tr. 34.) The trial court also indicated it had received a mitigation-of-penalty report completed by the court psychiatric clinic on May 21, 2025 and stated, "I have read and reviewed both of these reports." (Tr. 34.) Appellant's trial counsel confirmed that he was also in receipt of both reports and specifically stated that he had "no additions, changes, deletions or subtractions to either one of the reports." (Tr. 35.)

{¶ 9} Appellant's counsel then spoke on his behalf. He indicated that appellant was remorseful, had a history of family trauma as specified in the mitigation report, that he had previously attempted suicide, and that appellant had previously been shot, or at least "grazed" by a bullet. (Tr. 38.) Counsel also stated that appellant had been in a motor vehicle accident that caused damage to his skull, causing him difficulties in dealing with stressful situations and worsening his mental health. He indicated that appellant was self-medicating right before the incident and blacked out. Counsel explained that even though appellant had blacked out and did not recall the incident, his only explanation — based on the video footage — was that he must have thought one of the victims had a weapon. (Tr. 40.)

{¶ 10} Appellant himself read a prepared statement. He expressly claimed not to have recalled what happened. He apologized to the victims but also stated he was "not a bad person[;] just clearly wasn't thinking at the time." (Tr. 42.) Appellant

stated he took "full responsibility" for his actions but further noted his troubled upbringing and his use of drugs and alcohol to cope with his problems. (Tr. 42.)

{¶ 11} Victim Y.C. next addressed the trial court. He stated that because he had been burned at a very young age and had undergone 23-facial-reconstruction surgeries, he had spent years with no social life. Prior to this incident, however, that had changed. Y.C. secured employment in a fast-food restaurant and was on the path to becoming a team leader. As a result, his social life blossomed: "I was finally getting that [social life] at my job; I had friends. I had a normal life of an 18-year-old." (Tr. 26.)

{¶ 12} After the shooting, however, Y.C. lost his sense of safety, his ambition, and his job. He continued:

> That was taken away from me by the choice that Dameon Kijanski made that night. I ask the Court to consider the full weight of this crime; not just the choice Dameon Kijanski made but the impact that has lingered in every aspect of my life. I will carry this for the rest of my life. I hope the sentence reflects that reality and sends the message that this kind of violence has consequences.

(Tr. 26-27.)

{¶ 13} Y.C.'s sister then addressed the court. She explained that her brother went from being "full of life," "surrounded by friends," and having a "promising future" to someone "who lives in constant fear." (Tr. 48-49.) "He is a shell of the person . . . he was just the day before, which was Thanksgiving." (Tr. 49.)

{¶ 14} Next, Y.C.'s mother addressed the court.[1] She explained that Y.C. had a long history of disability but began working in January 2024 and was promoted in August 2024. After the shooting, however, he "has lost 55 pounds, he lost his job, he suffers PTSD, he doesn't talk to anybody, he doesn't sleep, [and] he throws up almost daily." (Tr. 54.) "He's alive today, thank God, but he doesn't live because this man shot them with no motive, no reason at all." (Tr. 54.)

{¶ 15} The State then spoke briefly, emphasizing that appellant's attack on the teenagers was entirely unprovoked and that they were approached from behind and from across the street. As noted above, the State played the surveillance video that captured the shootings.

{¶ 16} The trial court next addressed appellant directly. It established that he was already on probation for having weapons under disability and stated: "So you were on notice at that time that you were not permitted to carry a firearm. Correct?" (Tr. 63.) Appellant responded, "Yes, sir." (Tr. 63.)

{¶ 17} The trial court expressed skepticism at appellant's contention that he had blacked out and remembered nothing, noting that he recalled the preceding argument with his girlfriend that had left him a pedestrian. At that point appellant's memory improved: While the surveillance video had no sound, appellant recalled not only what he claimed to have seen but also what he said to the victims: "I seen one go like reach in his pocket, and I was like, 'Up it; show it' meaning like pull the

---

[1] Y.C.'s sister served as a Spanish language interpreter for their mother. The trial court specifically inquired whether appellant objected to the use of an interpreter not certified by the court. Appellant's counsel indicated there was no objection. (Tr. 50.)

gun out.  I was thinking like — I was tripping out and I thought maybe he had a gun[.]" (Tr. 64.)  The trial court asked if either of the teen victims responded. Appellant stated he could not recall because it "was like I blacked out after that." (Tr. 65.)

{¶ 18} Prior to imposing sentence, the trial court emphasized that it had "considered the record, the oral statements made here today, the Pre-Sentence Investigation Report, the Mitigation of Penalty Report, plea negotiations, the victim-impact statements and the discussion that we've just had." (Tr. 66.)  It stated that it based its decision on the R.C. 2929.11 overriding principles and purposes of felony sentencing as well as the R.C. 2929.12 seriousness and recidivism factors.  This included that it had ensured "that the sentence being imposed does not demean the seriousness of the crime, the impact it has had on the victims and will be consistent with similar offenses committed by like offenders." (Tr. 67.)

{¶ 19} With respect to Count 3, discharge of firearm on or near a prohibited premises, the trial court sentenced appellant to a term of imprisonment of six to nine years under the Reagan Tokes Law.  With respect to Count 7, felonious assault, the trial court sentenced appellant to a term of imprisonment of six years, plus three years on the accompanying firearm specification to be served prior to and consecutive to the six-year sentence on the underlying offense, for a total of nine

years on Count 7. With respect to Count 8, felonious assault, the trial court sentenced appellant to a term of imprisonment of six years.[2]

{¶ 20} With respect to Count 9, tampering with evidence, the trial court sentenced appellant to a term of imprisonment of 24 months. With respect to Count 10, having weapons while under disability, the trial court sentenced appellant to a term of imprisonment of 24 months.

{¶ 21} The trial court then announced that the prison terms on Counts 7, 8, and 10 would run consecutively to each other, while Counts 3 and 9 would run concurrently with each other and concurrently with all other counts, for an aggregate total prison sentence of 17 to 20 years. With respect to consecutive sentences, the trial court found:

> I'm going to find that consecutive sentences are necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and to the danger the offender poses to the public. And I'm also going to find that two of the offenses were committed as part of one or more courses of conduct, and the harm caused by two of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> Sir, you walked up on two random individuals and you shot both of them. Each of the two named victims in this case, Mr. [J.L.] and Mr.

---

[2] The transcript indicates the imposition of a term of imprisonment of six "months" rather than six years. The sentencing journal entry, however, indicates six years. Appellant concedes the reference to months was a "typographical or clerical error because [six] months is not an authorized or legal sentence for a felony of the second degree." (Appellant's brief at p. 3 fn. 1.) Appellant also acknowledges that he "was advised of the proper potential sentencing range for second degree felonies during the plea colloquy." *Id.*

[Y.C.] each deserve justice on their own; that's why those two counts are going to run consecutive with each other.

Finally, I'm going to say that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. This is your second weapons under disability case, this is your third weapons case. You were under a complete understanding that you are not to have a firearm. I determine that that's a history of criminal conduct, a course of conduct that is just appalling.

(Tr. 70-72.)

{¶ 22} The trial court rejected appellant's contentions that he had lacked the structure he needed to address his substance abuse and other problems, noting that appellant was "on Probation to this court for two different cases, three different cases if you include the one [the trial court] terminated you on earlier in this hearing." (Tr. 72.) It continued:

All you had to do was comply with the terms of the Probation Department. You would have gotten the mental health services that you needed, you could have gone to IOP, you could have done a number of things to better your life. But unfortunately you ruined two others, and at this period of time I cannot do anything to help you and you need to be away from the rest of society for this period of time.

(Tr. 72.)

{¶ 23} Finally, the trial court provided appellant with information regarding postrelease control.

{¶ 24} This timely appeal followed.

## II. Assignment of Error

{¶ 25} Appellant presents a single assignment of error for our review:

Appellant's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

{¶ 26} Appellant argues that the aggregate prison term of 17 to 20 years is clearly and convincingly not supported by the record. We disagree. Finding no merit to the assignment of error, we affirm.

## III. Analysis

### A. Standard of Review

{¶ 27} Appellate review of consecutive sentences is limited. We review the imposition of consecutive sentences using the standard set forth in R.C. 2953.08. *State v. Shephard*, 2024-Ohio-2010, ¶ 26 (8th Dist.). Pursuant to R.C. 2953.08(G)(2), an appellate court can overturn the imposition of consecutive sentences if the appellate court, upon review, clearly and convincingly finds that "'the record does not support the sentencing court's findings'" under R.C. 2929.14(C)(4), or the sentence is "'otherwise contrary to law.'" *Id.*, quoting *State v. Jones*, 2024-Ohio-1083, ¶ 12; *State v. Venes*, 2013-Ohio-1891, ¶ 11 (8th Dist.). "In order to reverse the imposition of consecutive sentences, the defendant must demonstrate that the consecutive sentences are clearly and convincingly not supported by the record. R.C. 2953.08(G)(2)." *State v. Stiver*, 2024-Ohio-65, ¶ 17 (8th Dist.).

{¶ 28} Appellate courts are "extremely deferential to the trial court" with respect to consecutive-sentence findings. *Id.* at ¶ 20; *see also State v. Gwynne*, 2023-Ohio-3851, ¶ 4. This deferential "clear and convincing standard of review . . . does not permit the appellate panel to substitute their judgment for that of the sentencing judge." *Stiver* at ¶ 17, citing *Venes* at ¶ 20. Accordingly, appellate courts

"cannot review the weight of individual considerations to determine whether a trial court 'sufficiently' considered the facts underlying the findings." *Stiver* at ¶ 17; *see also State v. Jones*, 2016-Ohio-8145, ¶ 16 (8th Dist.) ("[C]onsecutive-sentencing review is limited to determining whether the record supports the findings actually made; it is not an invitation to determine or criticize how well the record supports the findings."). Accordingly, this court has "deferred to the trial court when the issue was the weight of the record in support of the consecutive-sentence findings." *Id*. at ¶ 17.

### B. Imposition of Consecutive Sentences

{¶ 29} Pursuant to R.C. 2929.41(A), Ohio courts adhere to the presumption that sentences will be served concurrently. *Jones*, 2024-Ohio-1083, at ¶ 11. However, a trial court can impose consecutive sentences by finding, under R.C. 2929.14(C)(4), that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) at least one of the following applies: (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the

offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 30} To impose consecutive sentences, the trial court must make each finding required under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Hervey*, 2022-Ohio-1498, ¶ 19 (8th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, syllabus. A trial court "has no obligation to state reasons to support its findings." *Bonnell* at ¶ 37. However, "a reviewing court must be able to ascertain from the record evidence to support the trial court's findings." *Jones*, 2024-Ohio-1083, at ¶ 14, quoting *State v. Jones*, 2022-Ohio-2133, ¶ 13 (8th Dist.), citing *Bonnell* at ¶ 29.

{¶ 31} "A sentencing court's failure to make the above statutory findings is 'contrary to law.'" (Cleaned up.) *State v. Miller*, 2025-Ohio-2684, ¶ 11 (8th Dist.), quoting *State v. Hendricks*, 2015-Ohio-2268, ¶ 12 (8th Dist.), quoting *Bonnell* at ¶ 37. Here, appellant does not dispute that the trial court made the findings required by R.C. 2929.14(C)(4) and *Bonnell*.[3] He contends instead that the record does not support the trial court's consecutive-sentence findings.

{¶ 32} Because the court made the required findings to impose consecutive sentences, "we must affirm those sentences unless we clearly and convincingly find that the record does not support the court's findings." (Cleaned up.) *Miller* at ¶ 13;

_____

[3] "The trial court did make the findings required by the statute." (Appellant's brief at p. 9.)

R.C. 2953.08(G)(2). Here, our careful review of the record and relevant case law reflects evidentiary and legal support for the trial court's imposition of consecutive sentences.

{¶ 33} We first address the trial court's imposition of consecutive sentences with respect to Count 7 and Count 8, the two felonious-assault counts involving separate victims. The trial court expressly found that consecutive sentences were necessary to protect the public from future crime and to punish the appellant, that they were not disproportionate to the seriousness of his conduct and to the danger he poses to public. It then stated:

> I'm also going to find that two of the offenses were committed as part of one or more courses of conduct, and the harm caused by two of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> Sir, you walked up on two random individuals and you shot both of them. Each of the two named victims in this case, Mr. [J.L.] and Mr. [Y.C.] each deserve justice on their own; that's why those two counts are going to run consecutive with each other.

(Tr. 71.)

{¶ 34} This court has repeatedly found "that consecutive sentences are appropriate where there are multiple victims in order to 'hold the defendant accountable for crimes committed against each victim.'" *State v. Akins*, 2025-Ohio-5632, ¶ 54 (8th Dist.), quoting *State v. Thome*, 2017-Ohio- 963, ¶ 16 (8th Dist.). In *State v. Sparks*, 2024-Ohio-2362 (8th Dist.), the court found that "[t]he harm suffered by each of the victims clearly factored into the trial court's decision to

impose consecutive sentences." *Id.* at ¶ 18. *Sparks*, like the present case, involved two victims. This court held that the existence of multiple victims supported the trial court's consecutive-sentence findings under R.C. 2929.14(C)(4) with respect to the necessity of punishing the offender as well as "the finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Sparks* at ¶ 18-19, citing *State v. Batiste*, 2020-Ohio-3673, ¶ 22 (8th Dist.) and *State v. Sexton*, 2002-Ohio-3617, ¶ 67 (10th Dist.).

{¶ 35} Sparks did not challenge the trial court's R.C. 2929.14(C)(4)(b) finding. *Sparks* at ¶ 16. In *State v. Mitchell*, 2022-Ohio-3818 (8th Dist.), however, "the trial court made the finding under subdivision (C)(4)(b) that the harm caused to multiple victims was so great and unusual that no single term for any offense adequately reflects the seriousness of the offender's conduct." *Id.* at ¶ 12. This court found that "[t]hat finding satisfied the consecutive sentencing requirements." *Id.*

{¶ 36} We acknowledge that in *Mitchell* the appellant did "not challenge[] the factual underpinnings" of the trial court's R.C. 2929.14(C)(4)(b) finding. *Id.* at ¶ 13. But appellant here does no better. Instead, citing R.C. 2929.11, he first contends that "[t]he harm was not so great and unusual to overcome the requirement to impose concurrent sentences" and also that the trial court "did not discuss how [his] sentence is not *disproportionate* to sentences imposed on similarly situated offenders." (Emphasis added.) (Appellant's brief at p. 10.) The argument regarding similarly situated offenders, however, improperly conflates the

reference to proportionality in R.C. 2929.14(C)(4) with the trial court's consideration of R.C. 2929.11(B) statutory factors, including that a felony sentence be "consistent with sentences imposed for similar crimes committed by similar offenders." The trial court's consideration of R.C. 2929.11 statutory factors is not at issue in this appeal. The appellant in *State v. Bolden*, 2022-Ohio-2271 (8th Dist.), made a virtually identical argument. This court rejected it:

> Bolden's "disproportionate" argument is more akin to those made in challenging the findings made under R.C. 2929.11, not the imposition of consecutive sentences under R.C. 2929.14. In deciding whether to impose consecutive sentences, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public. Accordingly, the appropriate focus when reviewing consecutive sentences is on the seriousness of Bolden's conduct and the danger he poses, not those who have committed similar offenses.

*Id.* at ¶ 29.

{¶ 37} In *Bolden*, the appellant separately assigned error with respect to the trial court's R.C. 2929.11 and 2919.12 findings. The same was true in *State v. Martin*, 2025-Ohio-744 (8th Dist.), in which the appellant separately assigned error with respect to the trial court's consideration of R.C. 2929.11 and 2929.12 factors and the trial court's finding that consecutive sentences were appropriate under R.C. 2929.14(C)(4).

{¶ 38} The appellant in *Martin* contended, inter alia, that the trial court did not "make any findings that his sentence would be consistent with the sentences imposed for similar crimes by similar offenders." *Martin* at ¶ 11. This court rejected that argument even though the relevant portion of the sentencing entry nowhere

mentioned consistency with sentences imposed under similar circumstances. The trial court had stated in its sentencing entry that it had considered "all required factors of the law" and that "prison is consistent with the purpose of R.C. 2929.11." *Id.* at ¶ 12. The *Martin* Court found that the appellant had not "affirmatively demonstrated that the trial court failed to consider the statutory factors" and it therefore could not "conclude that Martin's sentence was contrary to law." *Id.* at ¶ 14. *See also Miller*, 2025-Ohio-2684, at ¶ 26 (8th Dist.); *State v. Browning*, 2022-Ohio-127, ¶ 12 (8th Dist.). Having disposed of Martin's assignment of error under R.C. 2929.11, only then did this court turn to his separate assignment of error with respect to the propriety of consecutive sentences under R.C. 2929.14(C)(4). *Martin* at ¶ 15.

{¶ 39} Here, as noted above, appellant has not separately assigned error with respect to the trial court's findings under R.C. 2929.11. Indulging appellant's argument, however, we note that the trial court stated on the record that it had considered the required sentencing factors. The trial court specifically stated on the record that it had ensured "that the sentence being imposed does not demean the seriousness of the crime, the impact it has had on the victims and will be consistent with similar offenses committed by like offenders." (Tr. 67.) It further stated in its sentencing entry that it had "considered all required factors of the law" and that "prison is consistent with the purpose of R.C. 2929.11." No further discussion was required with respect to the R.C. 2929.11 statutory factors, including the finding under R.C. 2929.11(B) of consistency "with sentences imposed for similar crimes

committed by similar offenders." The trial court was not required to provide a more detailed explanation for those R.C. 2929.11 findings. "Although trial courts are required to consider both R.C. 2929.11 and 2929.12 before imposing a prison sentence, they are not required to make specific findings under either of the statutes." *Martin* at ¶ 10. *See also Miller* at ¶ 26. Moreover, appellant "has not directed this court to any cases demonstrating that his sentence is inconsistent with similarly situated offenders or disproportionate to his crimes." *Bolden*, 2022-Ohio-2271, at ¶ 15 (8th Dist.).

{¶ 40} This concludes our R.C. 2929.11 detour and returns us to the trial court's findings under R.C. 2929.14(C)(4).[4] Appellant criticizes the trial court's reliance on the existence of multiple victims as a justification for imposing consecutive sentences, arguing that the notion that each victim "deserves their own justice . . . does not support a finding that the harm suffered by each victim was so great or unusual as to warrant consecutive times." (Appellant's brief at p. 10-11.) Appellant then argues that "[t]here is no statutory factor that requires the imposition of consecutive time based on the existence of multiple victims alone." (Appellant's brief at p. 11.) This argument is laid to rest by the line of cases discussed above. While none say that the existence of multiple victims *requires* the imposition

---

[4] We note that appellant also argues that R.C. 2929.12(C) "requires the court to consider numerous factors that indicate the offender's conduct is less serious" and that "the record supports a finding that appellant acted under strong provocation." (Appellant's brief at p. 11.) First, we disagree that the record supports such a finding. If anything, it indicates a complete lack of provocation. Second, we decline to further address appellant's R.C. 2929.12 argument for exactly the same reasons discussed with respect to his arguments under R.C. 2929.11.

of a consecutive sentence, they hold that "where there are multiple victims, the imposition of consecutive sentences is reasonable to hold the defendant accountable for crimes committed against each victim." *Thome*, 2017-Ohio-963, at ¶ 16 (8th Dist.). Appellant has not attempted to distinguish any of these cases. *See also State v. Brown*, 2020-Ohio-4474, ¶ 60 (8th Dist.) (consecutive sentences "not mandatory" where there are multiple victims, but imposition of consecutive sentences is generally reasonable to hold defendant accountable for crimes against multiple victims); *Batiste*, 2020-Ohio-3673, at ¶ 22 (8th Dist.).

{¶ 41} In *Brown*, yet another case with two victims, this court upheld the trial court's imposition of consecutive sentences, stating that "[r]epresentation for the harm suffered by each of the victims clearly factored into the trial court's decision here to impose consecutive sentences." *Brown* at ¶ 60. The same is true in this case with respect to the two counts of felonious assault.

{¶ 42} With respect to Count 10, the trial court specifically found that appellant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." (Tr. 71.) The trial court explained this R.C. 2929.14(C)(4)(c) finding by stating that this was appellant's "second weapons under disability case, this is your third weapons case." (Tr. 71.) It noted that appellant was "under a complete understanding that [he was] not to have a firearm" and found this to be "a history of criminal conduct, a course of conduct that is just appalling." (Tr. 71-72.)

{¶ 43} In addition to these observations, the trial court stated on the record that it had considered both "the Pre-Sentence Investigation Report" and "the Mitigation of Penalty Report." (Tr. 66.) Both items are part of the record on appeal. Upon review, we find them highly relevant both to appellant's history of criminal conduct and to his purported struggles with sobriety and mental-health challenges.

{¶ 44} In 2020, appellant pleaded no contest to amended charges in the Garfield Heights Municipal Court, which then found him guilty of assault and menacing. In June 2021, in the general division of the Cuyahoga County Court of Common Pleas, he pleaded guilty to charges stemming from three separate arrests. Specifically, he pleaded guilty to attempted having weapons while under disability and carrying concealed weapons with respect to a March 2020 arrest; to having weapons while under disability with respect to an October 2020 arrest; and to carrying concealed weapons with respect to a February 2021 arrest. In October 2022, he was found guilty of domestic violence in Garfield Heights Municipal Court. The same court found him guilty (after a plea of no contest) to an amended charge of aggravated menacing in March 2023.

{¶ 45} In addition to appellant's cases in the general division and municipal court, he has a lengthy history in juvenile court. "Ohio case law has also 'clearly established that a defendant's juvenile record may be considered as part of an offender's criminal conduct under R.C. 2929.14(C)(4) for the purposes of determining whether to impose consecutive sentences.'" *Akins*, 2025-Ohio-5632, at ¶ 54 (8th Dist.), quoting *State v. Riley*, 2025-Ohio-3276, ¶ 15 (8th Dist.), citing *State*

*v. Viers*, 2022-Ohio-4083, ¶ 18 (8th Dist.). *See also State v. Grant*, 2018-Ohio-1759, ¶ 42 (8th Dist.). As in *Riley*, appellant here "had a lengthy history in juvenile criminal history, including several juvenile delinquent adjudications with community-control placements[.]" *Riley* at ¶ 16. One juvenile court matter involved a weapons charge.[5]

{¶ 46} In light of this, we cannot find that the trial court's finding that appellant's criminal history justified consecutive sentences was clearly and convincingly not supported by the record.

{¶ 47} Appellant argues that mitigating factors such as his troubled upbringing, his long history of chemical dependency, and his mental-health issues weighed against consecutive sentences. Cases such as *Bolden*, 2022-Ohio-2271 (8th Dist.), however, indicate that such mitigation issues should be addressed as challenges to "the trial court's consideration of the factors under R.C. 2929.11 and 2929.12." *Id.* at ¶ 33 (8th Dist.). *See also State v. Whitehead,* 2021-Ohio-847 (8th Dist.) (trial court addressed mitigating factors in assignment of error under R.C. 2929.11 and 2929.12 but considered challenge to consecutive sentences in a wholly distinct assignment of error). Once again, we note that appellant has not separately assigned error with respect to the trial court's consideration of R.C. 2929.11 and 2929.12 factors.

---

[5] "Valid sentencing considerations may also include uncharged conduct, prior arrests, facts supporting a charge that resulted in acquittal, and facts related to a charge that was dismissed under a plea agreement." *Riley*, 2025-Ohio-3276, at ¶ 15 (8th Dist.).

**{¶ 48}** Even if he had, it would not alter our decision. The trial court here, as in *Bolden*, expressly stated that it considered appellant's mitigation evidence. In *Bolden*, where this court affirmed the imposition of consecutive sentences, this court quoted the trial court's confirmation that in formulating its sentence it had considered "everything that I know about you and about this case," including the presentence-investigation report, the statements at the sentencing hearing, and the arguments of counsel. *Bolden* at ¶ 33. Here, appellant's trial counsel had made mitigation arguments at sentencing, and the trial court confirmed that it had "considered the record, the oral statements made here today, the Pre-Sentence Investigation Report, the Mitigation of Penalty Report, plea negotiations, the victim-impact statements and the discussion that we've just had." (Tr. 66.) We emphasize again that when imposing consecutive sentences, a trial court "has no obligation to state reasons to support its findings." *Bonnell*, 2014-Ohio-3177, at ¶ 37. *See also State v. Matos*, 2026-Ohio-932, ¶ 22 (8th Dist.). "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29. Even if we might have weighed the mitigating factors differently, the deferential standard of review does not permit us to substitute our judgment for that of the trial court. *Stiver*, 2024-Ohio-65, at ¶ 17 (8th Dist.)

**{¶ 49}** Appellant further states that he accepted responsibility and expressed genuine remorse at sentencing. The record, however, reflects the trial court's

skepticism. When appellant stated he needed structure in his life, the trial court pointed out that appellant failed to take advantage of the many treatment services offered through probation. It also did not accept appellant's convenient statement that he blacked out during the incident, which was at odds not only with his recollection of the argument he had with his girlfriend but also with his account of gestures and words that occurred literally moments before the shooting. In other words, appellant's fog lifted when it was time to blame the victims by telling the court that he thought one of them fumbled with his pocket and might be reaching for a gun.

{¶ 50} The transcript from the sentencing hearing reflects the trial court's thorough and careful analysis regarding the imposition of consecutive sentences under R.C. 2929.14(C)(4). Its findings, especially in light of relevant case law, were supported by the record, and appellant has not affirmatively demonstrated otherwise. The Ohio Supreme Court has "instructed the appellate court that 'it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences' and that it should employ a deferential standard regarding the trial court's consecutive-sentence findings." *Matos* at ¶ 21, quoting *Gwynne*, 2023-Ohio-3851, at ¶ 15. In this case, the trial court's imposition of consecutive sentences was not contrary to law.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

LISA B. FORBES, P.J., and
EILEEN A. GALLAGHER, J., CONCUR