[Cite as *State v. Peterson*, 2026-Ohio-1553.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                    :

    v.                                                  :

                             No. 115313

DE'ANE PETERSON,                             :

    Defendant-Appellant.              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-23-686728-C, CR-24-697043-B, and CR-25-700501-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Schrembeck, Assistant Prosecuting Attorney, *for appellee.*

Dunham Law, LLC, and Michael P. Dunham, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} De'Ane Peterson filed the instant appeal seeking to appeal his guilty pleas as not knowingly, intelligently, or voluntarily entered and his sentence as both contrary to law and violative of his constitutional protections against cruel and

unusual punishment in Cuyahoga C.P. Nos. CR-23-686728-C ("2023 Case"), CR-24-697043-B ("2024 Case") and CR-25-700501-A ("2025 Case"). After a thorough review of the law and record, this court affirms.

## I. Facts and Procedural History

{¶ 2} The 2023 Case charged Peterson and two codefendants with 15 counts. Eight counts named Peterson: two counts of drug trafficking, two counts of drug possession, one count each of possessing criminal tools, having weapons while under disability, carrying a concealed weapon, and improperly handling firearms in a motor vehicle. Nearly all counts contained forfeiture specifications for various guns, cell phones, and scales.

{¶ 3} The 2024 Case charged Peterson and one codefendant with five counts: trafficking in heroin, possession of heroin, trafficking in cocaine, possession of cocaine, and tampering with evidence. Most counts contained forfeiture specifications for cell phones and money.

{¶ 4} He entered into a packaged plea agreement in these cases. In the 2023 Case, he pleaded guilty to drug trafficking with the attendant forfeiture specifications and having weapons while under disability with the attendant forfeiture specifications. In the 2024 Case, he pleaded guilty to trafficking in heroin with the attendant forfeiture specifications. All counts were third-degree felonies. Each respective journal entry provided that there were four plea conditions: (1) the pleas are packaged, (2) the offenses are not allied offenses of similar import, (3)

defendant understands that there is a mandatory prison sentence, and (4) Peterson will forfeit all items seized.

{¶ 5} Sentencing was scheduled for February 24, 2025, and Peterson did not appear. The trial court issued a capias, and he was arrested about a month later; the circumstances of the arrest forming the basis for the 2025 Case indictment. As described by the court during sentencing, Peterson "crashed a car while the police [were] chasing you, got out, ran, and left [four] kids in the car." (Tr. 55.)

{¶ 6} The 2025 Case charged Peterson with six counts: failure to comply with an order or signal of a police officer, obstructing official business, and four counts of endangering children. In May 2025, Peterson entered into a plea agreement, entering guilty pleas for failure to comply with an order or signal of a police officer, attempted obstructing official business, and one count of endangering children.

{¶ 7} The trial court sentenced Peterson on all three cases in June 2025. On the 2023 Case, he received 60 months (30 months on each count, run consecutively). On the 2024 Case, he received 30 months. On the 2025 Case, he received 30 months and 90 days in jail on the remaining two offenses, run concurrently. Each sentence was ordered to run consecutively for a total prison term of 120 months (10 years).

{¶ 8} Peterson appeals his pleas and sentence, assigning three errors for our review.

I.     The trial court abused its discretion in accepting Mr. Peterson's guilty plea because it was not made in a knowingly, voluntarily, and intelligent matter, in violation of his rights to due process of law and a fair trial under the U.S. Constitution. Amend V, U.S. Con. Amend. VI, U.S. Con. Amend XIV, and Ohio Con. Art. I. Tr. Passim.

II.    Counsel was ineffective for failing to describe on the record the possibility of consecutive sentences on all counts, thereby violating the defendant's right to a fair trial and the right to effective assistance of counsel under the Sixth Amendment. Amend. VI, U.S. Con. Amend. XIV, and Ohio Con. Art I. Tr. Passim.

III.   The trial court erred in sentencing Mr. Peterson to 10 years (120 months) in prison in violation of Mr. Peterson's right to due process of law, and to be free from cruel and unusual punishment under the U.S. Con. Amend. V, U.S. Con. Amend. VIII, U.S. Con. Amend. XIV, and Ohio Con. Art. I. Tr. Passim.

## II. Law and Analysis

### A. Crim.R. 11 and Knowing, Intelligent, Voluntary Pleas

{¶ 9} In his first assignment of error, Peterson contends that the trial court abused its discretion in accepting his guilty pleas because they were not made knowingly, voluntarily, and intelligently.  He argues that his pleas were "not made knowingly because he believed that only failure to comply with statutory requirements necessitated consecutive sentencing."  He also argues that "he was also told that, given the presumption against a maximum sentence and against consecutive sentencing, the worst he could receive was five years in prison."

{¶ 10} Crim.R. 11 "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State*

*v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). In reviewing pleas, we determine "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Id.* at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16; *State v. Clark*, 2008-Ohio-3748, ¶ 26; *State v. Miller*, 2020-Ohio-1420, ¶ 19.

{¶ 11} With limited exceptions, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.*, quoting *Nero* at *id.* When reviewing a colloquy for compliance with Crim.R. 11, we ask "(1) has the trial court complied with the relevant provisions of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 12} We begin by reviewing the Crim.R. 11 colloquy associated with the 2023 and 2024 Cases. Peterson has not pointed to any specific portion of the colloquy for us to examine but alleges instead that he was not sufficiently informed about the potential of receiving consecutive sentences.

{¶ 13} Upon review, we find that the record contradicts Peterson's assertion. Four pages of the transcript reflect the trial court's informing Peterson that he was not required to enter a plea deal and could instead take the case to trial if that was

his choice, after which the trial court asked Peterson if he had any questions. He answered "No, Your Honor. I'm ready to go forward." (Tr. 11.) Several more times throughout the hearing, the trial court paused to ask Peterson if he understood, had questions, or needed to speak with his attorney. Peterson affirmed his understanding and declined the trial court's numerous invitations to ask questions.

{¶ 14} Before proceeding to the colloquy, the trial court advised Peterson that "if you don't come back for sentencing, when we do catch up with you, and we will, then you'll be in a much worse position than maybe if you came back for sentencing." (Tr. 12.) During the colloquy, the trial court advised Peterson that "felonies of the third degree are punishable by a potential term of incarceration in monthly increments of nine, 12, 18, 24, 30, or 36 months." (Tr. 21.) The trial court noted that it was "not inclined" to max out consecutive sentences but clarified that it could "give [Peterson] 36 months on each count," to which Peterson verbalized understanding. (Tr. 22.) At the close of the hearing, the trial court again warned Peterson that "if you don't come back for sentencing on the 18th, we'll get you eventually. When we do, you're going to be spending a whole lot of time in prison." (Tr. 28.)

{¶ 15} We now review the Crim.R. 11 colloquy associated with the 2025 Case. The change-of-plea hearing occurred on May 29, 2025, and once again, the trial court engaged in an active dialogue with Peterson, pausing the proceedings numerous times to ensure that Peterson understood the advisements, and invited him to ask questions or speak with counsel. On the failure-to-comply charge, a

third-degree felony, the trial court advised Peterson that it was punishable "by a potential term of incarceration in monthly increments of 9, 12, 18, 24, 30 or 36 months" and Peterson verbalized that he understood. (Tr. 38.) The trial court also advised Peterson that "if there would be a prison sentence imposed on this count, any other prison sentence that you would receive on any of the other two cases would have to be run consecutive," and again Peterson verbalized his understanding. (Tr. 39.) The trial court repeated these advisements for the attempted obstructing official business charge and one of the endangering children charges, both of which were punishable by up to 180 days.

{¶ 16} We have thoroughly reviewed both colloquies between the court and Peterson. We find that the court complied with the relevant provisions of Crim.R. 11, and we find that Peterson has not met his burden to demonstrate prejudice, i.e., that he would not have entered the plea. We accordingly overrule Peterson's first assignment of error.

## B. Ineffective Assistance of Trial Counsel

{¶ 17} Peterson's second assignment of error posits that he received ineffective assistance of trial counsel because "he thought that, on the counts, conse[cutive] sentencing was not mandatory; the presumption of conse[cutive] was conclusive . . . [and] that the presumption against a maximum sentence was conclusive and not presumptive." According to Peterson, he believed that the maximum sentence he could have received was five years. He argues that he was

prejudiced by counsel's alleged deficiencies because he received "five additional years of prison."

{¶ 18} U.S. Const., amend. VI and Ohio Const., art. I, § 10 provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The Supreme Court of the United States has recognized that "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective-assistance claim, Peterson bears the burden of demonstrating that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him. *State v. Bates*, 2020-Ohio-634, ¶ 24, citing *Strickland* at 687- 688. Courts considering whether counsel's performance fell below an objective standard of reasonableness "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. When, as here, a defendant enters a guilty plea, they waive ineffective assistance of counsel "except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary." *State v. Parham*, 2018-Ohio-1631, ¶ 32 (8th Dist.), citing *State v. Williams*, 2014-Ohio-3415, ¶ 11 (8th Dist.).

{¶ 19} Peterson's argument is identical to his argument in the first assignment of error. Since we found that the trial court fully complied with Crim.R. 11 in the first assignment of error, we cannot now find that Peterson's plea was not knowingly, voluntarily, and intelligently entered. Additionally, Peterson's

contention that the prejudice he suffered — serving five more years than expected — is without merit.  First, this is speculative and cannot be discerned from the record. Second, during the change-of-plea hearing for the 2023 and 2024 Cases, the trial court indicated that it was inclined to give Peterson a shorter sentence but twice cautioned him that absconding could result in a longer sentence.  By the time sentencing occurred in June 2025, Peterson had (1) failed to appear for sentencing, (2) evaded arrest, and (3) been charged with new crimes in the 2025 Case.  It is more likely that Peterson's own behavior resulted in five more years than expected.  Based on the foregoing, we do not find that Peterson has demonstrated either of the necessary elements for an ineffective-assistance claim and accordingly overrule his second assignment of error.

### C. Peterson's Sentence

{¶ 20} In his final assignment of error, Peterson contends the trial court committed an error of law in sentencing him to 120 months.  He argues that the court's sentence was contrary to law because (1) it imposed consecutive sentences without the State "overcome[ing] the presumption against consecutive sentencing" and that (2) the sentence violated Peterson's U.S. and Ohio Constitutional protections against cruel and unusual punishment.

{¶ 21} Ohio courts presume that a defendant's multiple prison sentences will be served concurrently unless the trial court makes the required findings to support consecutive sentences under R.C. 2929.14(C)(4). R.C. 2929.41(A); *State v. Jones*, 2024-Ohio-1083, ¶ 11.  This court "may increase, reduce, or otherwise modify a

sentence . . . or may vacate the sentence and remand the matter to the sentencing court for resentencing" if "it clearly and convincingly finds . . . that the record does not support the sentencing court's findings under . . . (C)(4) of section 2929.14." *State v. Gwynne*, 2023-Ohio-3851, ¶ 12.

{¶ 22} Peterson argues that "no evidence was presented at sentencing to deter the commission of the offense or to rehabilitate [him]" and that "the facts are not the worst possible facts for the charges he faced." Under R.C. 2929.14(C)(4), the court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender"; "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and at least one of the following three factors:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction . . . or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 23} Here, Peterson contests the court's findings that consecutive sentences were necessary to protect the public from future crime and findings under R.C. 2929.14(C)(4)(b), relating to Peterson's multiple indictments and the severity of the facts associated with each charge.

{¶ 24} After careful review of the record, we do not clearly and convincingly find that the record does not support the court's consecutive-sentence findings. As explained in the preceding paragraphs, the record demonstrates that Peterson: (1) against the trial court's warnings, failed to show up for sentencing; (2) avoided taking responsibility for his actions; and (3) became the subject of another indictment while the 2023 and 2024 Cases were pending. As the trial court explained:

> The failure to comply does require that the prison sentence be run consecutive, but I also find that consecutive sentences are necessary to protect the public from future crimes or to punish you, and that consecutive sentences are not disproportionate to the seriousness of your conduct and the harm that you pose to the public. Again, you committed multiple offenses while you were awaiting sentencing and you went out, committed this last offense.

> Certainly you have a criminal history of conduct that demonstrates consecutive sentences are necessary to protect the public from future crimes by you, and so each of those 30 [months] that I've articulated in each of these cases will run consecutive to each other for an aggregate sentence of 120 months.

(Tr. 57-58.) Additionally, Peterson has a prior juvenile and adult record as well as previous convictions for failure to comply and having weapons while under disability. On this record, we do not find that Peterson's consecutive sentences were imposed contrary to law.

{¶ 25} Peterson also contends that his sentence is violative of his U.S. and Ohio Constitutional protections against cruel and unusual punishment because "30 months in prison for each count was erroneous because the record does not support

it, was an abuse of discretion, and was contrary to law because . . . a 'package sentence' where all counts are considered together is not allowed."

{¶ 26} However, Peterson does not highlight nor do we independently find any evidence in the record to suggest that the court sentenced this as a "package sentence." This is especially true where the record unequivocally demonstrates that the trial court separately sentenced Peterson on every count.

{¶ 27} For the reasons articulated above, we overrule Peterson's final assignment of error.

### III. Conclusion

{¶ 28} We do not find merit to Peterson's assignments of error and affirm the judgment of the trial court.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

LISA B. FORBES, P.J., and
TIMOTHY W. CLARY, J., CONCUR